OPINION OF THE COURT
Nicholas A. Clemente, J.
Plaintiff while employed by Ardell Engineering Corp. was injured on January 24, 1977 while working on the Santa Barbara, a ship owned by defendant, Prudential Lines, Inc. Shortly thereafter plaintiff began receiving employee compensation benefits. Then on November 29, 1978 the plaintiff commenced this action against defendant seeking damages for personal injuries. Plaintiff contending that the matter was settled for $8,500 now moves for an order directing judgment for such amount.
Defendant opposes the motion maintaining that if there had been an offer of settlement it is void because it was oral *569 and expressly revoked by plaintiff in 1979. Further points raised by the defendant are lack of authority of its employee with knowledge by plaintiff and laches in the instituting of the motion. Finally defendant argues that it should not be forced to settle a claim which is dismissable because of plaintiff’s lack of capacity to sue at the time the action was commenced. In conformance with that position defendant cross-moves to dismiss plaintiff’s complaint on the ground that it is time barred under the provisions of subdivision (b) of section 33 of the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA) (US Code, tit 33, § 933, subd [b]). That section provides as follows: “Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.”
Defendant maintains that plaintiff received his final award of workers’ compensation on August 19,1977 so that under the afore-mentioned statute plaintiff had to commence his action by February 19, 1978. Thus he was more than nine months late when the action was commenced on November 29, 1978.
The basis of defendant’s assertion that August 19, 1977 is the date of award is that plaintiff was sent United States Department of Labor form EEC 208 dated August 19,1977 and titled: “Compensation Payment Stopped or Suspended”. This form, inter alia, indicates that plaintiff returned to work on March 28,1977 and was granted disability payments for nine weeks, receiving a total of $3,082.86 in benefits. Defendant contends that this constituted plaintiff’s “award” of compensation. Thus, pursuant to subdivision (b) of section 33 of the LHWCA plaintiff’s failure to commence his third-party action (against the defendant ship owner) within six months of the August 19 date resulted in his cause of action being automatically assigned to his employer.
Plaintiff on the other hand contends that the “award” was not made until July 14, 1980, as indicated on United *570 States Department of Labor form LS-208 dated July 10, 1980. That form shows that a total of $8,351.13 was paid and that all parties agreed to finalization. Plaintiff also supplies a letter dated June 27, 1980 from the United States Department of Labor, Employment Standards Administration, Office of Workers’ Compensation Programs which, while setting the fee of plaintiff’s compensation representative, George J. Fortunato, also memorializes the conclusion of the compensation claim. It states as follows:
“The letter [dated May 27, 1980] and file shows that the parties have agreed to the following * **§** *
“(2) That adequate compensation has been paid from 1/25/77 through and including 3/28/77, 9 weeks @ $342.54 in the amount of $3,082.86;
“(3) That compensation is due for 71/2% permanent partial Disability of the left foot, 15.38 weeks @ $342.54 per week in the amount of $5,268.27 ***
“Upon completion of payment and the filing of Form BEC208, the case will be referred to our inactive files.”
This matter, therefore, resolves itself initially into a question of when the “award” was made.
Apparently an award need not be a formal event so that an agreement approved in an informal conference constitutes an “award” in a compensation case (Ambrosino v Transoceanic S. S. Co., 675 F2d 470). So, too, a letter may be considered an “award” where it memorializes a settlement despite the absence of even an informal conference (Lanza v Quebec & Ontario Transp. Co., 91 AD2d 518).[1]
Thus, the formalities of notice seem to be of little significance (with a tendency to easily trigger the six-month period of subdivision [b] of section 33 of the LHWCA) where there has been an agreement, however informal, by the injured worker. Equally obvious is that interim payments do not constitute the “award”, with its connotations of finality and assignment of the cause of action contemplated by subdivision (b) of section 33. The employee must *571 be aware of the full extent of the compensation he is to receive in order to start the six-month period of subdivision (b) of section 33 running. Support for this view is found in Verderame v Torm Lines (670 F2d 5, 6-7) and Gray v Rederi A/S Myren (87 AD2d 413). In Verderame the court stated (at pp 6-7): “The legislative history of the statute, as outlined by the Supreme Court and ourselves in Rodriguez, makes clear that Congress’ purpose was to provide the injured longshoreman, after he knows what his award of compensation benefits will be, with a period of six months within which to decide whether in light of all of the circumstances, including the settlement arrived at with the employer without proof of any fault, to bring an action against a third party seeking damages based on its negligence. The longshoreman cannot be expected to make an intelligent decision of this issue until he is in a position to appraise the full nature and extent of his injuries and the shipowner’s negligence, and until he knows the total amount of compensation which he can be sure of receiving from the employer or its insurer. To hold otherwise would be to force the longshoreman to proceed in the dark. On the other hand, once he is armed with information as to the total benefits he will receive from the insurer, he can, with knowledge of the seriousness of his injuries and the extent of the shipowner’s negligence, intelligently decide whether an action for damages against the shipowner would be likely to yield him any recovery over and above the compensation benefits plus the fee he would be required to pay to his attorney. For these reasons we hold that until the amount of compensation benefits to be received by the injured longshoreman is fixed, either by order, stipulation of the parties, or informal award, there cannot be an ‘[acceptance of compensation under an award in a compensation order’ within the meaning of § 33(b) of the Act.”
At bar, the date when plaintiff finally became aware of what he would receive appears to be May 27,1980 when in a letter signed by plaintiff and the insurer the amount of compensation was finally set. This must be deemed a stipulation of settlement which under Verderame (supra), triggers the running of the six-month period of subdivision (b) of section 33 of the LHWCA. Since the third-party *572 action was commenced in 1978, it clearly was timely brought.[2]
The sole remaining issue, therefore, is whether there is an enforceable settlement agreement between the parties.
Both parties concede that settlement negotiations were conducted which resulted in a settlement offer of $8,500. It is also not disputed that on October 1, 1979 plaintiff’s attorney wrote to defendant indicating that plaintiff had rejected such offer.
It is apparent that defendant after that rejection was not bound to its offer. Plaintiff contends, however, that subsequently defendant reoffered the $8,500 and it was accepted by plaintiff. In addition, general releases and stipulations of discontinuance were forwarded to the defendant but no moneys were ever received to complete the transaction despite repeated promises by the defendant to pay the settlement.
Significantly the defendant, while dwelling upon the initial rejection of the offer by the plaintiff, never denies plaintiff’s claim of the reoffer and acceptance except to maintain a lack of authority by its claims manager.
The plaintiff in support of his position annexes a letter written by his attorney to defendant stating:
“[W]e have now been asked to submit general releases to conclude same in the amount originally agreed upon $8,500.00.
“General releases will shortly be forthcoming.”
Then by letter dated July 10, 1981 general releases, stipulation of discontinuance and satisfaction of compensation lien were forwarded to defendant.
*573 Further support for the assertion that a settlement was revived is provided by an affidavit of George J. Fortunato, plaintiff’s compensation representative, before the United States Department of Labor. He avers that after plaintiff rejected the $8,500, he, Fortunato, spoke with the claims manager for the defendant and the $8,500 offer was renegotiated and accepted by plaintiff. Again, on December 17, 1980 he spoke with a claims agent for defendant who reconfirmed the $8,500 offer and requested closing papers. In furtherance of the settlement effort Fortunato secured the agreement of the compensation carrier to waive its compensation lien and releases and other closing papers were thereafter mailed to defendant.
Mr. Fortunato, without contradiction and by affidavit, further states that there were “many” conversations with both the representative of defendant and their then attorney and each time was advised “that by reason of cash flow difficulties, the check was not forthcoming but would eventually be paid”. Further that “the releases would be honored as the money came into the company”.[3]
There now being a refusal of payment the issue is further refined to the question whether an otherwise valid settlement agreement is required to be in writing.
CPLR 2104 provides as follows: “An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.”
It is true that there is no written instrument (or proceeding in open court) which is subscribed by defendant that would indicate any agreement to pay $8,500 to settle the claim. Where a dispute exists as to an agreement to settle and there is no written instrument subscribed by the party who resists the assertions of settlement enforcement will generally be withheld (cf. Jade Sq. & Tower v C.I.T. Corp., *574 87 AD2d 564; Jacknis v Fire Prevention Prods. Corp., 78 AD2d 651; Morrison v Bethlehem Steel Corp., 75 AD2d 1001; Fox v Wiener Laces, 105 Misc 2d 672, 673).
It is also true that settlement negotiations which lead to an executory accord are not binding unless the accord is reduced to writing (General Obligations Law, § 15-501, subd 2; Condo v Mulcahy, 88 AD2d 497). Subdivision 1 of section 15-501 of the General Obligations Law defines an executory accord as follows: “Executory accord as used in this section means an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, contract, obligation, or lease, or any mortgage or other security interest in personal or real property, and a promise express or implied to render such performance in satisfaction or in discharge of such claim, cause of action, contract, obligation, lease, mortgage or security interest.”[4]
In Langlois v Langlois (5 AD2d 75, 78) the court specifically discussed settlement of tort claims stating:
“Notwithstanding these strong reasons for construing all settlements of tort claims, in the absence of an expression of a contrary intention, as superseding agreements, there is a strong line of authority in this State to the effect that an agreement settling a tort claim made prior to suit or made out of court during the pendency of the action is presumed to be a mere executory accord * * * However, when the case is actually reached in court and a settlement is agreed upon in open court and is spread upon the minutes of the court as a disposition of the case, it is invariably construed as a superseding agreement * * *
“While the settlement in this case may not technically have been made in open Court (Matter of Gardiner, 204 Misc. 884, but see Gass v. Arons, 131 Misc. 502), the *575 circumstances were such as to warrant an inference that the parties intended it to be a superseding agreement. The trial was actually in progress, the fact that the case had been settled was recorded in the clerk’s minutes, the case was marked ‘settled’ on the court calendar, and the jury was discharged * * *
“There is no requirement that such a superseding agreement be in writing in order to make it enforcible.”
Based upon the foregoing one might well argue that absent the moment of trial an oral settlement agreement is unenforceable.
It has been recognized, however, that the rule requiring stipulations of settlement to be in writing is one of convenience designed to relieve courts from having to resolve disputes as to the terms of such stipulations. Thus where there is no dispute as to terms it is eminently reasonable to refuse to permit use of the rule against a party who has been misled or deceived by the oral stipulation to his detriment or who has relied upon it. (2A Weinstein-Korn-Miller, NY Civ Prac, par 2104.04, p 21-33). A party opposing a settlement may be estopped from relying upon a technical noncompliance with CPLR 2104 (A.J. Tenwood Assoc. v United States Fire Ins. Co., 104 Misc 2d 467, 470). By a parity of reasoning and notwithstanding the general rule expressed in Langlois an executory accord should not be unenforceable for lack of a writing where the party opposing it has engaged in conduct approaching fraud.
When a defendant forestalls payment of an agreed settlement for a prolonged period of time by pleading an inability to pay and secures the acquiescence of a plaintiff by continuous uncontroverted promises to pay (cf. Block v Breindel, 5 AD2d 1007, 1008, mot for rearg den 6 AD2d 793) then he should not be now allowed to claim that the agreement is unenforceable because it is oral. The court should not reward deception.
Therefore, the court finds that there is in existence an enforceable settlement agreement and further, that the court has the power to enforce it in a summary way by motion (Axin v Delibab Corp., 24 AD2d 974).
*576 Accordingly, the motion for judgment in the amount of $8,500 pursuant to the settlement agreement is granted and the cross motion to dismiss the complaint is denied.

. It should be pointed out that not all jurisdictions are prepared to accept a relaxation of what constitutes an award for purposes of subdivision (b) of section 33 of the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA) (US Code, tit 33, § 933, subd [b]) (cf. Rother v Interstate & Ocean Transp. Co., 540 F Supp 477, 484, citing Rodriguez v Compass Shipping Co., 451 US 596, 598-599, n 3).

. Defendant also argues, in a fashion which appears to be an afterthought, that the action should be barred because the New York State Workmen’s Compensation Law applies and that allows only one year from time of accrual to commence an action. This argument seems specious. Except for a form letter from the compensation carrier, which is obviously incorrect, the defendant does not indicate why New York law should apply where the matter in issue involves a compensation program under LHWCA administered by the U.S. Department of Labor. Moreover, examination of the triggering requirements for assignment contained in section 29 of the Workmen’s Compensation Law would indicate, without further proof, that even under New York law the action was timely.

. I place no credence in defendant’s contention regarding the lack of authority of its claim manager because the circumstances herein relate also to oral promises by its attorney to the same effect.

. Goldbard v Empire State Mat. Life Ins. Co. (5 AD2d 230, 235) explains the law in regard to executory accord as follows: “When, however, it is concluded that the settlement negotiations have resulted in no more than in an agreement to accept a future performance, albeit by a promise presently made, in future satisfaction of the old obligations — in this State especially — another principle of law intervenes. In New York, an executory accord not fully performed * * * may be enforced, provided it is in writing and signed by the party to be held.”