Filippo Tuttobene, Appellant, v Moore-McCormack Lines, Inc., Respondent.

Second Department, May 14, 1984

APPEARANCES OF COUNSEL

*Irving B. Bushlow* for appellant.

*Costello & Shea (Joseph F. Cafiero* of counsel), for respondent.

OPINION OF THE COURT

Brown, J.

The issue presented on this appeal is whether the plaintiff irrevocably assigned his negligence claim to his employer by virtue of the operation of the provisions of subdivision (b) of section 33 of the Federal Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 933, subd [b]). We conclude that he did not.

The plaintiff, a longshoreman, was injured on December 20, 1976, while working on a pier owned by defendant Moore-McCormack Lines, Inc. (Moore-McCormack), located at 23rd Street in Brooklyn. Plaintiff's employer, International Terminal Operating Corp. (International), which was hired by Moore-McCormack to do stevedoring work upon the pier, voluntarily paid plaintiff compensation benefits for the period December 21, 1976 to January 11, 1977. Thereafter, International filed a notice that any claims for further payments would be controverted, causing plaintiff to file a claim for workers' compensation benefits pursuant to the provisions of the Federal Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 901 *et seq.*). Plaintiff returned to work on June 27, 1977. An informal conference was held before a claims examiner for the United States Department of Labor on July 28, 1977, at which plaintiff claimed that compensation payments should be made for the period through June 26, 1977 and International argued that no further compensation payments should be made. The claims examiner issued a "Memorandum of Informal Conference" on August 1, 1977, recommending that plaintiff be paid additional compensation for the period from January 12, 1977 to March 29, 1977. Thereafter, plaintiff received a copy of a notice dated August 8, 1977, from International's compensation carrier to a deputy commissioner of the United States Department of Labor, indicating that compensation payments had been made for the period from December 21, 1976 to March 29, 1977 and that further payments were stopped "as per award" effective August 8, 1977.

On March 26, 1980, plaintiff commenced the instant action. On September 5, 1980, Special Term (Bernstein, J.), granted Moore-McCormack's motion to dismiss the complaint as untimely under the three-year Statute of Limitations set forth in CPLR 214 (subd 5) for commencement of personal injury actions. However, on November 24, 1980, the court, upon reargument, recalled that order and denied the motion on the basis that the timeliness of the action was governed by the traditional Federal maritime standard of laches, rather than by the CPLR (*Guzman v Farrell*

*Lines,* 69 AD2d 802). The court concluded that plaintiff's conduct did not constitute laches.

Thereafter, by notice of motion dated August 26, 1981, Moore-McCormack moved for summary judgment on the basis that plaintiff's failure to bring an action against it within six months after accepting a compensation award constituted a complete assignment of his cause of action to his employer, pursuant to subdivision (b) of section 33 of the Federal Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 933, subd [b]). Special Term granted the motion, reasoning that payment pursuant to an award was made no later than August 8, 1977, and that, since plaintiff commenced his action more than six months after the award, he no longer had a cause of action, "it having been assigned to his employer by automatic operation of section 933 [b]". Special Term rejected the plaintiff's contention that the award of August 8, 1977 was only an interim award.

By notice of motion dated March 30, 1982, plaintiff moved to renew, but improperly denoted his motion a motion to reargue. In support of his motion, plaintiff submitted a stipulation, dated April 8, 1982, signed by plaintiff, his representative, and his employer's insurance carrier (who is also his employer), under which the carrier agreed to pay plaintiff compensation for the period from March 30, 1977 to June 26, 1977. The stipulation was approved by a United States Department of Labor claims examiner on April 29, 1982. Special Term, however, denied the motion to renew on the basis that the additional proof did "not alter the fact that payment pursuant to an award was made no later than August 8, 1977". We conclude that this determination was erroneous.

Subdivisions (a) and (b) of section 33 of the Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 933, subds [a], [b]) state:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to

receive such compensation or to recover damages against such third person.

"(b) *Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award*" (emphasis added).

Pursuant to the statute, a longshoreman who accepts "compensation under an award in a compensation order" has an unqualified right to bring an action against a third party during the six-month period following the award, but the failure to do so operates as an irrevocable assignment of the claim to the employer or its subrogee (*Rodriguez v Compass Shipping Co.,* 451 US 596, 611-612, reh den 453 US 923; *Verderame v Torm Lines,* 670 F2d 5; see, also, 1A Benedict, Admiralty [7th rev ed], § 96).

In *Pallas Shipping Agency v Duris* (461 US 529), however, the United States Supreme Court went further and held that a *formal* compensation order issued by a deputy commissioner of the United States Department of Labor is required to commence the running of the time period during which a longshoreman must commence an action. In discussing the history of the Longshoremen's and Harbor Workers' Compensation Act, the court noted that when the act was originally enacted in 1927, it required that a longshoreman choose between the receipt of a compensation award from his employer and a damage suit against a third party; if the longshoreman elected to receive compensation, his right to a damage suit was automatically assigned to his employer. In 1938, however, Congress amended the act to provide that in cases in which *compensation was not made pursuant to an award by a deputy commissioner,* the longshoreman would not be required to choose between the compensation award and an action for damages. Thus, no election of remedies was required unless compensation was paid pursuant to such award. The court noted that "[t]he requirement of a formal award was designed to protect the longshoreman from the unexpected loss of his rights against a negligent third

party and to permit him to make a considered choice among available remedies." (*Pallas Shipping Agency v Duris, supra,* p ___, p 1995.) The court further noted that in 1959 Congress eliminated the harsh election of remedies requirement and amended subdivision (b) of section 33 of the act to its present form. In discussing the statutory change, the court stated (p ___, p 1996):

"There is no indication, however, that Congress intended to alter this statutory language governing the prerequisites for an assignment of the longshoreman's right of action. To the contrary, Congress indicated that its aim in amending § 33 was 'to continue the current judicial construction' of the retained portions of the provision. 105 Cong. Rec. 9226 (1959). As noted above, see *supra,* at 7, this Court had previously concluded in *American Stevedores, Inc. v Porello, supra,* that an assignment occurred under § 33 (b) only after a longshoreman accepted an award by the deputy commissioner.

"Moreover, the Act continues to equate a 'compensation order' with the formal document filed by the deputy commissioner at the conclusion of administrative proceedings, as it has since the LHWCA was enacted. See §§ 19, 21-22, 44 Stat. 1435-1437. Finally, limiting § 33(b) to formal compensation orders continues to serve the underlying congressional purposes even though the statute no longer requires an immediate election of remedies. Service of the compensation order puts the longshoreman on notice that his acceptance of future compensation payments will result in the irrevocable assignment of his claims, albeit not immediately but six months later. Of equal importance, the requirement of a formal compensation order enhances an injured longshoreman's opportunity to make a well-considered decision whether to bring an action against a third party by allowing him to delay his decision until the amount of compensation to which he is entitled under the Act is clearly established in a judicially enforceable order".

Thus, in the instant case, in order to establish that the six-month limitation period for commencing a third-party action had expired, it must be shown that there was such a formal compensation order. A defendant seeking the benefit of the six-month limitation period has the burden of

establishing the existence of the formal compensation order (see *Perez v Costa Armartori, S.P.A.,* 465 F Supp 1211). Defendant here has failed to sustain its burden.

While Moore-McCormack contends that the six-month limitation period was triggered by the award reflected in the memorandum of informal conference dated August 1, 1977, the regulations promulgated under the Longshoremen's and Harbor Workers' Compensation Act for the resolution of compensation disputes indicate otherwise. Those regulations distinguish between "informal conferences" (see 20 CFR 702.301-702.319) and "formal hearings" (see 20 CFR 702.331-702.351). Formal hearings, which are conducted before an administrative law judge, result in the entry of a formal order by a deputy commissioner either rejecting the claim or making a formal compensation order (US Code, tit 33, § 919; 20 CFR 702.349, 702.350; see, also, *Pallas Shipping Agency v Duris,* 461 US 529, __, 103 S Ct 1991, 1993-1994, *supra*). Under the regulations, however, a formal compensation order may also issue at the conclusion of an informal conference. Thus, 20 CFR 702.315 provides, in pertinent part: "(a) Following an informal conference at which agreement is reached on all issues, the deputy commissioner shall (within 10 days after conclusion of the conference), embody the agreement in a *memorandum or within 30 days issue a formal compensation order,* to be filed and mailed in accordance with § 702.349. If either party requests that a formal compensation order be issued the deputy commissioner shall, within 30 days of such request, prepare, file, and serve such order in accordance with § 702.349" (emphasis added).

In the case at bar, there is nothing in the memorandum of informal conference which indicates that it was agreed upon by all parties that compensation was to be paid only for the period of January 12, 1977 to March 29, 1977. Rather, what appears in the memorandum is a *recommendation* by a claims examiner that compensation be paid for that period. Moreover, nowhere in the record is there a formal compensation ordered issued by a deputy commissioner. Nor can the notice of the termination of compensation payments dated August 8, 1977 be said to satisfy the requirement for a formal compensation order. The *Pallas*

decision makes it clear that such notices, which must be filed with a deputy commissioner (US Code, tit 33, § 914, subd [c]), "are distinguishable from compensation orders in form, function, and legal effect: they are not issued by the deputy commissioner; they are neither administratively reviewable nor judicially enforceable * * * [and] [n]othing in the Act suggests that the filing of these forms is equivalent to 'an award in a compensation order.'" (*Pallas Shipping Agency v Duris, supra,* p __, p 1994.) Thus, without any proof of a formal order of compensation, plaintiff's action must be deemed to be timely commenced.

We also note that even absent a consideration of the *Pallas* decision, plaintiff's action was timely. In *Verderame v Torm Lines* (670 F2d 5, 7, *supra*), the court noted that "until the [total] amount of compensation benefits to be received by the injured longshoreman is fixed, either by order, stipulation of the parties, or informal award, there cannot be an '[a]cceptance of compensation under an award in a compensation order' within the meaning of § 33(b) of the Act" (see, also, *Gray v Rederi A/S Myren,* 87 AD2d 413; *Hansen v Prudential Lines,* 118 Misc 2d 568). Applying the rationale of *Verderame v Torm Lines* (*supra*), to the facts of the case at bar, it was not until April 8, 1982, when plaintiff and his employer's insurance carrier entered into the stipulation by which the insurance carrier agreed to pay plaintiff compensation for the period to June 26, 1977, that plaintiff first knew the total amount of benefits that he would receive. Plaintiff's action, commenced more than two years before that date, was timely.

Accordingly, defendant's motion to dismiss should have been denied.

THOMPSON, J. P., RUBIN and BOYERS, JJ., concur.

Order of the Supreme Court, Kings County, dated May 10, 1982, reversed, on the law, with costs, motion to renew granted, and, upon renewal, defendant's motion for summary judgment denied, complaint reinstated, and matter remitted to the Supreme Court, Kings County, for further proceedings consistent with the opinion herein.