In re LADY MADONNA INDUSTRIES, INC., Lady Madonna Management Corp., and Lady Madonna Manufacturing Co., Debtors.

The ROYAL BANK AND TRUST COMPANY, Plaintiff-Appellant,

v.

John S. PEREIRA, as Chapter 7 Trustee, Defendant-Appellee.

No. 87 Civ. 2796 (RJW).

United States District Court, S.D. New York.

Aug. 13, 1987.

---

**13.** *In re Baldwin-United Corp.,* 765 F.2d 343, 347 (2d Cir.1985).

**14.** *Zorwitz v. Okin,* 121 F.Supp. 56, 57 (E.D.N.Y. 1954).

Labozzetta & Hass, New York City, for plaintiff-appellant; Robert L. Howard, Henry G. Levy, of counsel.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for defendant-appellee; Richard J. Rubin, Stuart I. Gordon, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Appellant The Royal Bank and Trust Company ("RBT") appeals from an order entered pursuant to an oral decision on March 10, 1987 by the Honorable Howard C. Buschman III, Bankruptcy Judge for the Southern District of New York, denying its motion to compel John S. Pereira, as Chapter 7 Trustee ("Trustee") of the debtor Lady Madonna Industries, Inc. ("Lady Ma-

donna" or "the Debtor") to submit a proposed settlement to the Bankruptcy Court for approval. For the reasons hereinafter stated, the Court affirms Judge Buschman's decision.

## BACKGROUND

Lady Madonna is a clothing manufacturer. Although the exact facts of the dispute are unclear, the record reflects that RBT loaned money and extended credit to Lady Madonna during 1980 and 1982. To secure these loans, RBT and Lady Madonna entered into security agreements pursuant to which RBT was given a security interest in all of Lady Madonna's assets, except inventory.[1]

Lady Madonna filed petitions for reorganization under Chapter 11 of the Bankruptcy Code on January 12, 1984. On August 3, 1984, RBT moved by order to show cause for relief, including an order recognizing its security interest in the Debtor's accounts receivable, trademarks and tradenames ("trademarks") and modifying the automatic stay to allow it to foreclose upon the trademarks. On August 14, 1984, the Bankruptcy Court granted the requested relief with respect to the accounts receivable, but adjourned the motion with respect to the trademarks. This motion was subsequently denied without prejudice to the filing of a complaint initiating an adversary proceeding to seek the relief concerning the trademarks.

After the cases were converted from Chapter 11 to Chapter 7, the Bankruptcy Court held a hearing on November 18, 1985 and approved the Trustee's sale of the trademarks for $325,000, free and clear of liens. On the date of the Chapter 11 filing by Debtors, Lady Madonna owed RBT $3,472,302 as a result of advances on a line of credit, term loans and account over-drafts. The collection of $4,000 in accounts receivable subsequently reduced this debt.

RBT commenced this adversary proceeding against the Trustee on May 22, 1986, seeking a judgment determining that RBT has a valid lien on the trademarks and tradenames ("trademarks") owned by Lady Madonna ("the Debtor") pursuant to the 1980 and 1982 security agreements and ordering Trustee to turn over the proceeds, plus interest earned thereon, to RBT.

Both prior to and subsequent to the commencement of this adversary proceeding, the parties, through their attorneys, discussed settlement over a period of five months. At one point, the Trustee's attorney offered to settle the adversary proceeding for $200,000 and RBT countered with an offer of $240,000. On October 7, 1986, the Trustee served a motion to dismiss the adversary proceeding. On that date, Bankruptcy Judge Buschman held a pretrial conference and the pending settlement offers were placed on the record.

On October 27, 1986, RBT and the Trustee met to discuss settlement. Neither side contests the fact that the parties agreed to an oral settlement providing for the payment of $205,000 by the Trustee to RBT, plus interest accruing from that date. At the close of the meeting, RBT offered to prepare settlement papers, but Trustee's counsel said he would promptly prepare them since RBT was entitled to interest running from that day. In several telephone conversations, Trustee's counsel informed counsel for RBT that he was preparing settlement documents. During that time, RBT agreed to several adjournments of the pretrial conference in the adversary proceeding.

On December 10, 1986, Trustee's counsel mailed the Trustee a draft of the stipulation, application and order authorizing the

---

**1.** Paragraph one of each security agreement grants RBT a security interest in "all of [Debtors'] accounts receivable, contract rights, equipment and farm products, and any instruments, documents, chattel paper and general intangibles relating thereto or arising therefrom … and all cash and non cash proceeds and products thereof ('Collateral')." The UCC–1 Forms signed by Lady Madonna and RBT and filed with the New York County Clerk and New York Secretary of State describe the RBT's security interest as including "[all] accounts receivable, contract rights of debtor now existing or owned or hereafter arising or acquired, together with all instruments, documents, chattel papers and general intangibles relating to or arising from the foregoing collateral and all cash and non-cash proceeds and products thereof."

settlement for his review and signature. Trustee's counsel notified RBT's counsel that the Trustee was reviewing the settlement documents. On December 16, 1986, Trustee's counsel informed RBT's counsel that the Trustee had approved the settlement documents with minor changes, but was considering backing out of the settlement. On December 17, 1986, RBT's counsel advised Trustee's counsel that if the Trustee did not submit an application to the Bankruptcy Court for approval of the settlement, RBT would make a motion to compel him to do so. The Trustee did not apply for approval of the settlement and on January 28, 1987, RBT moved the Bankruptcy Court to compel the Trustee to submit the settlement to the Bankruptcy Court for approval. Judge Buschman held a hearing on March 10, 1987 and thereafter signed an order denying RBT's motion. It is this order which is presently being appealed before this Court.

This appeal presents, in the first instance, the question whether the order appealed from is a final order or an order reviewable under the collateral order doctrine. In addition, the Court must consider whether it should grant leave to appeal if the order is interlocutory. The substantive issues before the Court include the questions of whether state or federal common law should govern the validity of a settlement in a Bankruptcy case and whether an oral agreement is sufficient to satisfy the appropriate standard for compelling submission of a settlement to a bankruptcy judge. The Court heard oral argument on these issues on July 30, 1987.

## DISCUSSION

### I. Jurisdictional Issues

28 U.S.C. § 158(a) provides that the district court "shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges ..." In this case, the Court must determine whether Judge Buschman's March order is a final order which the parties may appeal as of right and, if the order is not final, whether the Court

within its discretion may hear the order as an interlocutory appeal.

### A. Finality of the Order

A final order is an order which requires nothing further than the mechanical entry of judgment by the trial court. *In re Ben Hyman & Co.*, 577 F.2d 966 (5th Cir.1978). *See In re Johns-Manville Corporation*, 824 F.2d 176 (2d Cir.1987) (final order fully and finally resolves a case); *In re Johns-Manville Corp.*, 32 B.R. 728 (S.D.N.Y.1983) (final order is an order which ends litigation on merits and leaves nothing for court to do except execute judgment). By comparison, "[a]n interlocutory order or decree is one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *In re Merle's, Inc.*, 481 F.2d 1016 (9th Cir.1973).

■ At the outset, the Court notes that the parties have not drawn the Court's attention to a case which squarely addresses the issue of whether a bankruptcy court's order denying a motion to compel the trustee to submit a settlement to the bankruptcy court for approval is appealable as a final order under the Bankruptcy Act.

*In re Tidewater Group, Inc.*, 22 B.R. 500 (N.D.Ga.1982), *appeal dismissed*, 734 F.2d 794 (11th Cir.1984), however, presents a closely analogous situation. In that case, the District Court found that the Bankruptcy Court's order refusing to confirm a settlement was not a final order because, although it finally determined the settlement issue, "it does not end the litigation, it does not decide the merits, it does not determine the rights of the parties in the disputed contract, it settles no liability, and establishes no damages." *Id.* at 504. In reaching its conclusion, the District Court relied on *In re Merle's Inc., supra*, 481 F.2d at 1018. In that case, the Ninth Circuit held that while an order approving a compromise is final because it finally determines the rights of the parties, an order disapproving a compromise is not final because it determines no rights and settles no is-

sues, leaving the questions open for future adjudication.

Judge Buschman's order in this case determines only the narrow issue of whether the Trustee must submit the settlement to the Bankruptcy Court. By not requiring the Trustee to submit the settlement, the order clearly does not finally determine the rights of the parties or end the litigation. However, even if the Trustee had been compelled to submit the settlement to the Bankruptcy Court, the order still would not have been final. Such an order would merely bring the settlement before the Bankruptcy Judge; the Bankruptcy Judge would still have had to evaluate and confirm the settlement before it could be considered final. Accordingly, the order denying the motion to compel the Trustee to submit the settlement to the Bankruptcy Court for approval is not a final order.

■ RBT asserts that even though the order may not be a final order, it is nonetheless appealable as a final order under the collateral order exception to the final judgment rule. *See Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). An order is appealable under the collateral order exception if the order (1) is independent and easily separable from the substance of other claims in the action; (2) presents a need for prompt review to protect important interests of any party; and (3) depends on practical, rather than narrowly technical considerations. *In re Tidewater Group, Inc., supra,* 734 F.2d at 796–97. *See also In re Johns-Manville Corporation., supra,* 824 F.2d at 180. Some courts have interpreted practical considerations as requiring the order under review to contain questions that are "serious, unsettled and of general applicability." *In re Tidewater Group, Inc., supra,* 22 B.R. at

504. *See also Bennett v. Behring Corp.,* 629 F.2d 393, 395 (5th Cir.1980).

■ The order at issue does not fall within the collateral order exception. Considering the *Cohen* requirements in turn, the Court finds that the order of the bankruptcy judge in this case is independent and easily separable from the substance of other claims in the action. *Cf. In re Tidewater Group, Inc., supra,* 22 B.R. at 505 (review of the bankruptcy judge's refusal to confirm a settlement necessarily included an assessment of the merits of the dispute). Secondly, the posture of this litigation does not present an overwhelming need for prompt review. The urgency of an appeal depends on the appellant's ability to vindicate his position on appeal from a final judgment. The mere possibility in this instance that the reviewing court may eventually compel the Trustee to submit the settlement agreement to the bankruptcy judge presents no issue of "such extraordinary urgency as to justify piecemeal review." *In re Tidewater Group, Inc., supra,* 22 B.R. at 505; *see Richardson-Merrell Inc. v. Koller,* 472 U.S. 424, 430–31, 105 S.Ct. 2757, 2761–62, 86 L.Ed.2d 340 (1985) (collateral order doctrine confined to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal). Even if the Court were to find that the question raised in the order is generally important, the Court would nevertheless have to hold that, because the issues raised are not sufficiently urgent, the order is not appealable under the collateral order doctrine.

### B. Interlocutory Review

■ Inasmuch as the order of the Bankruptcy Judge is neither a final order nor falls within the collateral order doctrine, it is appealable only in the Court's discretion as an interlocutory order. *See* Bankruptcy Rule 8001(b)[2] At oral argument, RBT re-

2. Bankruptcy Rule 8001(b) reads:
An appeal from an interlocutory judgment, order or decree of a bankruptcy judge as permitted by 28 U.S.C. § 1334(b) or § 1482(b) shall be taken by filing a notice of appeal, as prescribed in subdivision (a) of this rule, accompanied by a motion for leave to appeal prepared in accordance with Rule 8003 and

with proof of service in accordance with Rule 8008. Pursuant to Bankruptcy Rule 8003(c):
If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court or the bankruptcy appellate panel

quested the Court hear the matter as an interlocutory order.

An application for leave to appeal from an interlocutory order "should be liberally granted where it can help the expeditious resolution of the case." *In re Johns-Manville Corp.,* 45 B.R. 833, 835 (S.D.N.Y.1984) (citing *In re Manville Forest Products Corporation,* 31 B.R. 991, 995 n. 5 (S.D.N.Y.1983))

Courts have applied the same standard to bankruptcy interlocutory orders as to interlocutory orders generally from district courts. Leave to appeal interlocutory orders of the Bankruptcy Court is to be granted "if there are controlling questions of law as to which there are substantial grounds for difference of opinion and if an immediate appeal from the order may materially advance the ultimate termination of the litigation." *see* 28 U.S.C. § 1292(b); *In re Johns-Manville Corp., supra,* 45 B.R. at 835. *See also In re Den-Col Cartage & Distribution, Inc.,* 20 B.R. 645 (D.C.Colo. 1982); *In re Tidewater Group, Inc., supra,* 22 B.R. at 506.

Since the facts in this case are not disputed and the instant appeal raises questions as to whether the bankruptcy court applied the proper legal standards, this case is a strong candidate for interlocutory review. *See In re Tidewater Group, Inc., supra,* 22 B.R. at 506. The instant appeal presents a controlling question of disputed law as to whether state law or federal common law applies in determining the validity of settlement agreements in a bankruptcy case. Moreover, resolution at this time will materially advance the ultimate termination of the litigation. If the Court finds either that the bankruptcy judge applied the incorrect standard or that he improperly applied the law, this Court could require the bankruptcy judge to compel the Trustee to submit the settlement to the bankruptcy court. Such action by the bankruptcy judge (particularly if the judge later confirmed the settlement) would materially advance the ultimate termination of

the litigation. In addition, resolving the disputed issue at this point may avoid the expense and delay of a trial. Accordingly, the Court finds that the bankruptcy judge's order is appealable as an interlocutory order.

## II. What Law to Apply

The threshold question raised in this action is whether state or federal law determines the validity of an oral settlement agreement in a bankruptcy suit. Although it is federal bankruptcy law which substantively provides a vehicle through which the court marshals a debtor's assets and determines the priority of a creditor's claims, the rights and liabilities adjudicated within bankruptcy proceedings are often created and determined by reference to state law. *See e.g.,* 3 Collier on Bankruptcy, ¶ 502.02 (15th ed. 1984) (when the bankruptcy court hears a matter that had its source in state law, state law is applied); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (absent a federal interest requiring a differing result, there is no reason why property interests, which are created and defined by state law, should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding); *Chicago Board of Trade v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924) (where bankruptcy law deals with property rights which are regulated by state law, federal courts in bankruptcy should follow state law); *Matter of Bollinger Corp.,* 614 F.2d 924, 925 n. 1 (3rd Cir.1980) (state law governs the secured interests asserted by parties in bankruptcy); *In re Crosson,* 226 F.Supp. 944 (D.C. Tenn.1963) (state law governs validity of lien claimed by secured creditor).

■ Where, as here, a case falls within the ambit of an extensive federal statutory and regulatory scheme, but the language of the federal legislation does not directly address the precise question at issue, federal courts are competent to fill the void by incorporating state law or by fashioning an

---

may also deny leave to appeal but in so doing shall consider the notice of appeal as a mo-

tion for leave to appeal.

independent federal doctrine. *See* C. Wright, The Law of Federal Courts 394 (4th ed. 1983); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726–28, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981); *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 888–89 (3d Cir.1975).[3] The pertinent analysis assesses "whether there exists a valid and substantial federal interest or policy that requires the application of fed-

eral law as an exercise of interstitial lawmaking to protect or effectuate the federal scheme."[4] *First Southern Fed. Sav. v. First Southern Sav.*, 614 F.2d 71, 73–74 (5th Cir.1980). Absent such a federal interest or policy, state law should apply. *Id.*

■ Factors relevant to the determination of whether federal law should be applied include: the need for a uniform federal rule, the extent to which the transaction in question fits within the normal course of activities regularly governed by state law, and the possibility of the state rule frustrating the operation of the federal statutory scheme. *Three Rivers Motors Co. v. Ford Motor Co., supra,* 522 F.2d at 889–90;

**3.** In this type of situation, the doctrine of *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), does not apply because the Court is crafting a rule of law to fill a void in a federal scheme. *See* C. Wright, The Law of Federal Courts 394–95 (4th ed. 1983); *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949); *Sola Electric Co. v. Jefferson Electric Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942); *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 889 (3d Cir.1975).

However, even if the question in this case were not considered to fall within the federal bankruptcy law, but were instead treated as a dispute over whether federal or state law should apply to an oral settlement with respect to the validity of a lien and the *Erie* doctrine did apply, this Court would nevertheless reach the same result.

*Erie* originally stood for the principle that state law be applied by federal courts with regard to all substantive law questions, while federal law be applied to all procedural issues. Later modifications of *Erie* shifted the inquiry to whether the application of state law would be "outcome determinative." *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The outcome determinative test gives way, however, where there is a strong countervailing federal interest in applying a federal rule. *Byrd v. Blue Ridge Electrical Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). *See also Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (further modification of *Erie* doctrine). Application of the *Erie* doctrine is not dependent on the jurisdictional basis of a case, even through the doctrine has most frequently been applied in cases where federal jurisdiction is based on diversity of citizenship. *See* 19 Wright, Miller, Cooper, Fed.Pract. & Procedure, § 4515, at 275; *Van Gemert v. Boeing Co.,* 553 F.2d 812, 813 (2d Cir.1977) (the source of the right sued upon is the determinative factor in selecting the governing law); *Maternally Yours v. Your Maternity Shop,* 234 F.2d 538, 540–41 (2d Cir.1956) (same).

Application of *Erie* and its progeny to this case would require that state law be applied. Because the existence of a settlement is basically a question of contractual interpretation, state law with regard to settlements is substantive law. However, even if the law governing settlements were considered procedural, state law would still be applied because the resolution of the issue would be outcome determinative and because there is no applicable federal rule. *See Jarvis v. Johnson,* 668 F.2d 740, 747 (3rd Cir. 1982) (Because it is outcome determinative, Pa. R.C.P. 238 applies in a diversity case even though the Rule was adopted pursuant to the State Supreme Court's valid exercise of its power to make rules of "procedure"). Finally, state law should be applied to the settlement because the underlying dispute relates to a lien which has its source in state law.

**4.** As discussed in Hart and Wechsler, *The Federal Courts and the Federal System* (2d Ed.1973):

Federal law is generally interstitial in its nature. It rarely occupies a legal field completely, totally excluding all participation by the legal systems of the states. This was plainly true in the beginning when the federal legislative product (including the Constitution) was extremely small. It is significantly true today, despite the volume of Congressional enactments, and even within areas where Congress has been very active. Federal legislation, on the whole, has been conceived and drafted on an *ad hoc* basis to accomplish limited objectives. It builds upon legal relationships established by the states, altering or supplanting them only so far as necessary for the special purpose. Congress acts, in short, against the background of the total *corpus juris* of the states in much the way that a state legislature acts against the background of the common law, assumed to govern unless changed by legislation.

Hart and Wechsler, *The Federal Courts and the Federal System* 470–71 (2d Ed.1973).

*see In re G & L Packing Co., Inc.*, 41 B.R. 903 (N.D.N.Y.1984).

In the instant case, the Court must determine whether to create a federal rule or adopt state law to judge the validity of an oral settlement agreement between parties to a bankruptcy dispute. The situation in this case does not present a strong need for uniformity sufficient to justify the implementation of a federal common law rule. In *Three Rivers Motors Co. v. Ford Motors Co., supra*, 522 F.2d at 890, the Third Circuit discussed the need for uniformity with respect to the interpretation of a release in an antitrust action. Distinguishing the release situation from other circumstances in which the application of state law can frustrate federal objectives,[5] the court stated:

> In contrast, when two private parties bargain for a release, they are little affected by the diversity of state laws controlling the interpretation of releases. Even though the private antitrust cause of action is likely to involve multi-state and multi-party litigation, a release of that cause is nothing more than a contract negotiated between two or more of the private parties. Irrespective of the variation among state laws interpreting releases, the contracting parties can readily couch their release agreement in terms compatible with whichever state's law is applicable. Thus, a nationally uniform interpretation rule would have little utility. Its only effect would be to encourage the contracting parties to phrase their release in terms compatible with the national rule rather than with the law of a particular state.

*Id.* Similarly in a bankruptcy action, when the trustee and a debtor engage in settle-

ment discussions, they are not significantly affected by the diversity of state laws controlling the validity of settlement agreements. A settlement agreement, like an antitrust release, is essentially a private contract which can easily be drafted to be made compatible with whichever state's law is applicable. In this situation, the Court sees little need to impose a uniform rule.

Moreover, the transaction in question fits easily within the normal course of activities regularly governed by state law. A long line of precedent supports the view that state law customarily governs the validity, enforcement and interpretation of settlement agreements. One bankruptcy court, expressing the prevailing rule observed by Federal courts, has stated that "the validity or enforceability of a settlement agreement in court proceedings is regulated generally by State law." *In re Chism*, 57 B.R. 23, 27 (Bkrtcy.M.D.Ala.1985) (citing *Wong v. Bailey*, 752 F.2d 619 (11th Cir.1985)). *See also In re Beverly Hills Bancorp v. Commercial Paper Holders*, 649 F.2d 1329, 1332 (9th Cir.1981) (settlement agreement is a contract to be construed under state law); *In the Matter of the Hawaii Corp.*, 796 F.2d 1139, 1143 (9th Cir.1986) (interpretation of settlement agreement governed by the Hawaiian law of contracts); *Glazer v. J.C. Bradford & Co.*, 616 F.2d 167, 169 (5th Cir.1980) (state law controls whether a contract of settlement was made in diversity suit); *Lewis v. Transload and Transport, Inc.*, 642 F.Supp. 865, 867 (E.D.La.1986) (construction and enforcement of settlement agreements governed by principles of state law); *In re Tidewater Group, Inc.*, 8 B.R. 930, 931 (Bkrtcy.N.D. Ga.1981) (construction of oral settlement

---

5. For example, the Third Circuit described the situation in *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), in which the Supreme Court held that the diversity of state commercial law necessitated the development of federal common laws to govern commercial paper issued by the United States. In *Clearfield*, a pay check issued by the United States in Pennsylvania was stolen and cashed by way of a forged endorsement. Clearfield Trust Company, a Pennsylvania bank, presented the check for payment to the Federal Reserve Bank

in Philadelphia and collected the face amount. Over eight months later, the United States notified Clearfield Trust that the endorsement was a forgery and instituted an action for reimbursement. Under Pennsylvania law, the delay in notifying the bank of the forgery would have prevented the United States from recovering the funds. The Court, however, refused to apply the state rule, finding that variable state laws would subject the United States to great uncertainty.

agreement in bankruptcy action controlled by Georgia law); *In re Kealoha,* 2 B.R. 201, 208 (Bkrtcy.D.Haw.1980) (settlement agreements are contracts governed by contract law). Inasmuch as the Court perceives no useful purpose to be served by implementing federal common law in this area,[6] the Court declines to adopt a separate federal common law rule for determining the existence of a settlement in a bankruptcy case.

Finally, applying state law to enforcement of settlement agreements in bankruptcy disputes will not frustrate the operation of the statutory scheme since the applicable state law does not conflict with any federal policy or interest in the Bankruptcy Code. Bankruptcy Rule 9019 provides that on motion by the trustee and after a hearing on notice to creditors, the Bankruptcy Court may approve a compromise or settlement. Requiring a binding settlement to exist under settled state law rules prior to compelling the trustee to submit the settlement to the bankruptcy judge would effectuate the congressional purpose of having the trustee submit settlements which he believes are in the best interests of the estate. The stricter standards of proof under state settlement law will be useful in avoiding the situation where the trustee is forced to submit an alleged settlement to the bankruptcy judge that the trustee will subsequently oppose as being counter to the best interests of the

creditors of the estate. *See generally, Burks v. Lasker,* 441 U.S. 471, 479, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979) (state rule permitting disinterested corporate directors to discontinue shareholder derivative suits is not inconsistent with federal policies or interests); *First Southern Fed. Sav. v. First Southern Sav., supra,* 614 F.2d at 74 (applying state law to trade name dispute); *Three Rivers Motors Co. v. Ford Motor Co., supra,* 522 F.2d at 891 (applying state law to interpret releases of antitrust claims does not contravene federal policy).

Because the Court perceives there is little need for a uniform federal rule, that the area fits within the normal course of activities governed by state law, and that the application of state law will not frustrate the federal scheme, the Court concludes that there is no valid or substantial federal interest or policy that requires the application of federal law. Accordingly, state law governing the validity of settlement agreements should be applied. In New York, the appropriate law to apply is C.P.L.R. 2104, the New York law that governs evaluation of whether an enforceable settlement agreement exists. *See Randim Marketing, Inc. v. Professional Sports Merchandisers, Inc.,* 571 F.Supp. 1169, 1170 (S.D.N.Y.1983) (applies C.P.L.R. 2104 to evaluate validity of oral settlement agreement).[7]

**6.** In other areas of the law, particularly where the area is exclusively federal or where Congress has mandated a policy of encouraging settlements, courts have created an independent federal rule to govern the validity of settlements and releases. *See e.g., Maynard v. Durham & Southern Railway Co.,* 365 U.S. 160, 161, 81 S.Ct. 561, 562, 5 L.Ed.2d 486 (1961) (federal law determines validity of releases under Federal Employers' Liability Act); *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981) (federal law determines the validity of settlement of Title VII actions); *Strange v. Gulf & South American Steamship Co.,* 495 F.2d 1235, 1236 (5th Cir.1974) (federal law determines validity of oral settlement agreements within federal courts' admiralty and maritime jurisdiction); *DiMartino v. City of Hartford,* 636 F.Supp. 1241, 1249 (D.Conn.1986) (federal law determines validity of settlements under the Age Discrimination in Employment Act).

The Court has also found federal case law in other substantive areas where the inherent au-

thority and equitable power of a federal court to enforce settlement agreements was relied upon. *See e.g., Campbell v. American Airlines, Inc.,* 818 F.2d 288 (2d Cir.1987); *Bostick Foundry v. Lindberg, A Div. of Sola Basic,* 797 F.2d 280 (6th Cir.1986), *cert. denied,* ––– U.S. –––, 107 S.Ct. 953, 93 L.Ed.2d 1002 (1987); *Kukla v. National Distillers Products Co.,* 483 F.2d 619 (6th Cir. 1973); *Cia Anon Venezolana De Navegacion v. Harris,* 374 F.2d 33, 36 (5th Cir.1967); *Leon Industries, Inc. v. I.C.N. Pharmaceuticals,* 472 F.Supp. 1241 (E.D.Mo.1979).

**7.** Although the parties did not bring it to the Court's attention, the Second Circuit and other courts within this district have applied the New York state common law of contracts to determine the validity of an oral settlement agreement. *See Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78 (2d Cir.1985); *International Telemeter Corp. v. Teleprompter Corp.,* 592 F.2d 49, 56 (2d Cir.1979); *Vari-o-Matic Mach. v. N.Y. Sew. Mach. Attach. Corp.,* 629 F.Supp. 257, 259

290

Inasmuch as the Court holds that New York law must be applied to determine the validity of a bankruptcy settlement, the Court concludes that the bankruptcy court erred insofar as it reached a contrary decision with respect to the application of state law.

III.   Application of C.P.L.R. 2104

■ C.P.L.R. 2104 provides as follows:

An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in writing subscribed by him or his attorney or reduced to the form of an order and entered.

This section clearly applies to settlement agreements. *In re Dolgin Eldert Corp.*, 31 N.Y.2d 1, 334 N.Y.S.2d 833, 286 N.E.2d 228 (1972).

This rule, however, is not applied literally to all situations, as a number of exceptions have developed. New York courts have found "substantial compliance" with section 2104 where letters by attorneys exist explicitly acknowledging an oral settlement, *Morrison v. Bethlehem Steel Corp.*, 75 A.D.2d 1001, 429 N.Y.S.2d 123 (4th Dept.1980), or where a judge makes detailed notes of settlement terms. *Golden Arrow Films, Inc. v. Standard Club of California, Inc.*, 38 A.D.2d 813, 328 N.Y.S.2d 901 (1st Dept.1972).

In addition, New York Courts have applied principles of estoppel in individual instances to prevent fraud or injustice. *See, e.g., Hansen v. Prudential Lines, Inc.*, 118 Misc.2d 568, 461 N.Y.S.2d 670

(Sup.Ct.Kings Cnty.1983); *A.J. Tenwood Assoc. v. U.S. Fire Ins. Co.*, 104 Misc.2d 467, 428 N.Y.S.2d 606 (Sup.Ct.N.Y.Cnty. 1980). As the court pointed out in *Hansen:*

It has been recognized, however, that the rule requiring stipulations of settlement to be in writing is one of convenience designed to relieve courts from having to resolve disputes as to the terms of such stipulations. Thus where there is no dispute as to terms it is eminently reasonable to refuse to permit use of the rule against a party who has been misled or deceived by the oral stipulation to his detriment or who has relied upon it.... A party opposing a settlement may be estopped from relying upon a technical noncompliance with C.P.L.R. 2104.

*Hansen v. Prudential Lines Inc., supra*, 461 N.Y.S.2d at 670 (citing 2-A J. Weinstein, H. Korn & A. Miller, N.Y.Civ.Prac. ¶ 2104.04 (1987)).

It is clear that in the instant case C.P. L.R. 2104 was neither literally complied with, in that the settlement agreement was not evidenced by a writing subscribed by the defendant or its attorney nor made between counsel in open court. The Court also finds that the doctrine of substantial compliance is not satisfied by the proffered letters which refer to the settlement as a draft. Nor did Bankruptcy Judge Buschman play a significant role in the settlement negotiations as the bankruptcy judge did in *Golden Arrow Films, Inc. v. Standard Club of California, Inc., supra*, 328 N.Y.S.2d at 901. Although the instant case is similar to *A.J. Tenwood Assoc. v. U.S.*

(S.D.N.Y.1986). In *Winston*, the Second Circuit articulated four factors to assist an inquiry regarding whether or not parties intend to be bound in the absence of a fully executed document: 1. whether there has been an express reservation of the right not to be bound in the absence of a writing; 2. whether there has been partial performance of the contract; 3. whether all the terms of the alleged contract have been agreed upon; and 4. whether the agreement at issue is the type of contract that is usually committed to writing. *Id.* at 80. The Court believes that an application of this standard to the facts of the instant case would lead to the same result as the application of C.P.L.R. 2104. *See Davidson Pipe Co. Inc. v. Laventhol and*

*Horwath*, Nos. 84—5192, 6334, slip op. (S.D.N.Y. February 11, 1986) [Available on WESTLAW, DCT database] (oral settlement agreement where plaintiffs' counsel said "we have a deal" is not enforceable because parties did not intend to be bound until formal document was executed). Although in this case the outcome would be the same under either standard, the Court believes that the preferable standard for the settlement of disputes within bankruptcy is the specific writing requirement of C.P.L.R. 2104. Requiring a formal signed document will impress upon the trustee the seriousness of the agreement, thereby encouraging settlements only when they are in the best interests of the estate.

*Fire Ins. Co., supra,* 428 N.Y.S.2d at 606, because there is no dispute that an oral agreement was reached, the present action is distinguishable in that there is little evidence that RBT relied to its detriment on the Trustee's oral representations. In *Tenwood,* the plaintiff relied by executing and delivering settlement documents and not proceeding to an immediately available trial. By contrast, in the instant case, it was the Trustee who prepared the unsigned draft settlement documents and, as noted by the bankruptcy judge, there was no prospect of an immediate trial. Unlike *Hansen v. Prudential Lines Inc., supra,* 461 N.Y.S.2d at 670, there was neither a prolonged delay accompanied by continuous misrepresentations regarding imminent payment nor the preparation of discontinuance papers. The only significant delay in the present action resulting from the Trustee's behavior was an adjournment of the Trustee's own motion to dismiss. Moreover, while RBT asserts that the additional legal expenses incurred in the motion to compel the settlement constitute significant detriment, these expenses alone do not satisfy the *Hansen* standard. Legal expenses would be incurred in any situation where the existence of a binding settlement is disputed. Under these circumstances, RBT has failed to prove the necessary degree of detrimental reliance required to invoke estoppel.

The Court, therefore, affirms the decision of the bankruptcy court to the extent that it finds that the settlement agreement does not meet the necessary standards for compelling submission to the bankruptcy judge for confirmation.

## CONCLUSION

This Court finds that the order appealed from is not a final order, nor is it appropriately reviewed under the collateral order doctrine. Leave to appeal from the interlocutory order is granted, however, in that the appeal presents a controlling question of law as to which there are substantial grounds for difference of opinion and because an immediate appeal may materially advance the ultimate termination of the litigation. Contrary to the bankruptcy judge's view, this Court finds that state law should be applied to evaluate an oral settlement in a bankruptcy case. Because the bankruptcy court utilized state law as a guide and thereby reached the proper result, the decision of the bankruptcy court is affirmed.

It is so ordered.