**Eleanor MONAGHAN, Individually and as Guardian Ad Litem for William Monaghan, an incompetent, Plaintiffs,**

v.

**SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Defendant.**

**SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Third–Party Plaintiff,**

v.

**The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and Port Authority Trans–Hudson Corp., Third–Party Defendants.**

**SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Second–Third–Party Plaintiff,**

v.

**TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, McLane Security, Inc., Second–Third Party Defendants.**

No. 89 Civ. 4900 (RWS).

United States District Court, S.D. New York.

Feb. 3, 1995.

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, of counsel), for plaintiffs.

Ahmuty, Demers & McManus, New York City (Philip McManus, Deborah Del Sordo, of counsel), for defendant SZS 33 Associates, Inc.

The Port Authority of New York and New Jersey, New York City (Keith Harris, of counsel).

*OPINION*

SWEET, District Judge.

Plaintiffs William and Eleanor Monaghan (the "Monaghans") have moved to enforce an oral agreement of settlement between them and defendant SZS 33 Associates, L.P. ("SZS"). Also, SZS sought to enforce a contractual indemnification provision under an easement agreement (the "1935 Easement Agreement") against Port Authority of New York and New Jersey ("Port Authority") and the Port Authority Trans–Hudson Corporation ("PATH") (together "Port Authority/PATH") in the course of a trial between SZS and Port Authority/PATH.

For the reasons set forth below, the Monaghans' motion to enforce the settlement agreement is granted, and SZS is entitled to contractual indemnification under the 1935 Easement Agreement.

***The Parties***

The plaintiffs are natural persons who reside and are domiciled in the State of New Jersey who sought to recover damages for injuries sustained by William Monaghan ("Monaghan") in the course of an armed robbery attempt which took place on March 23, 1987, in a vestibule and stairway in the former Gimbels building at West 32nd Street and Avenue of the Americas in Manhattan, leading to Port Authority/PATH's 33rd Street subway station. Monaghan was shot in the head and is severely brain damaged.

SZS, a Delaware limited partnership, owns property in the State of New York, specifically, the property located at 1275 Broadway in New York City, formerly known as the Gimbels Building.

Port Authority and PATH are governmental entities duly organized and existing under and by virtue of the laws of the States of New York and New Jersey. PATH is a wholly owned subsidiary of Port Authority which operates a public railroad transportation system.

Non-party defendant McLane Security, Inc. ("McLane") is a corporation duly organized and existing under the laws of the State of New York who provided security services at the Premises under contract to SZS.

***Prior Proceedings***

The prior proceedings in this diversity action are fully set forth in the prior opinions of this Court, familiarity with which is assumed. *See Monaghan v. SZS 33 Assocs.*, 1995 WL 10843, No. 89 Civ. 4900 (S.D.N.Y. January 12, 1995); *Monaghan v. SZS 33 Assocs.*, 1994 WL 714436, No. 89 Civ. 4900 (S.D.N.Y. Dec. 21, 1994); *Monaghan v. SZS 33 Assocs.*, 1994 WL 623185, No. 89 Civ. 4900 (S.D.N.Y. Nov. 9, 1994); *Monaghan v. SZS 33 Assocs.*, 1994 WL 584699, No. 89 Civ. 4900 (S.D.N.Y. Oct. 24, 1994), *Monaghan v. SZS 33 Assocs.*, 153 F.R.D. 60 (S.D.N.Y.1994); *Monaghan v. SZS 33 Assocs.*, 827 F.Supp. 233 (S.D.N.Y.1993); *Monaghan v. SZS 33 Assocs., L.P.*, 148 F.R.D. 500 (S.D.N.Y.1993); *Monaghan v. SZS 33 Assocs., L.P.*, 1992 WL 135821, No.

89 Civ. 4900, 1992 U.S.Dist. LEXIS 7864 (S.D.N.Y. June 1, 1992); *Monaghan v. SZS 33 Assocs., L.P.,* 1991 WL 156377, No. 89 Civ. 4900, 1991 U.S.Dist. LEXIS 10943 (S.D.N.Y. Aug. 8, 1991); *Monaghan v. SZS 33 Assocs., L.P.,* 760 F.Supp. 355 (S.D.N.Y.), *aff'd,* 953 F.2d 635 (2d Cir.1991) (unpublished summ. order) (Nos. 91–7781, 91–7803, slip. op. (2d Cir. Dec. 5, 1991)).

By order of October 25, the action was set for trial on November 15. Settlement negotiations in this case were conducted, with the participation of the Court, on October 12, 1994, October 24, 1994, November 9, 1994, November 10, 1994 and November 14, 1994. SZS settled its third-party claims against McLane on October 24, 1994, with an undertaking by McLane to contribute to the contemplated settlement with the Monaghans. These meetings were not on the record.

Appearing at the November 14 settlement conference were Philip McManus and Deborah DelSordo, counsel for SZS; Keith Harris, counsel for Port Authority/PATH; and Alan J. Konigsberg and Audrey Perlman, counsel for the Monaghans. All parties agreed at the November 14 meeting to the conditions of payment of $7,500,000 to the Monaghans as an appropriate settlement of their claim. SZS and Port Authority/PATH, although in agreement on the reasonableness of the settlement amount to the Monaghans, were unable to reach agreement with respect to an issue, discussed below, relevant to the resolution of the third party claims of SZS against Port Authority/PATH.

The third-party action was then severed and set for trial before a jury on January 11, 1995.

The Monaghans' motion to enforce the settlement with SZS was filed on December 14, 1994 and oral argument was heard on December 21, 1994.

On January 11, 1995 the trial of the third-party action commenced, concluding with a special verdict rendered on January 27, which determined the allocation of liability for the Monaghans' damages. SZS was found to be 15 percent liable, McLane 5 percent liable and Port Authority/PATH 70 percent liable.

During the trial of the third-party claim it was agreed that the contractual indemnity claim would be tried to the Court and the following facts were established during the trial.

Certain post-trial motions are yet to be heard.

*Facts*

1. **Facts Concerning the Settlement Agreement**

William Monaghan is now 71 years of age. His medical condition is precarious and as set forth above, protracted litigation has delayed a resolution of his claim.

At the November 14 settlement meeting, SZS offered to pay plaintiffs $7,500,000 in settlement of plaintiffs' claims against SZS, contingent upon Port Authority/PATH's agreement that (i) the plaintiffs were entitled to compensation and that this settlement amount was fair and reasonable, and (ii) Port Authority/PATH and SZS would proceed to trial of the SZS' third-party action for indemnification and contribution. Plaintiffs counsel accepted this offer on behalf of plaintiffs and the trial date was adjourned to November 21, 1994. SZS and Port Authority/PATH sought to reach a written agreement and during that process Port Authority/PATH sought to preserve, in the express language of the proposed writing, its right to assert the affirmative defense of setoff as offered by § 15–108 of the New York General Obligations Law. SZS took issue with the Port Authority/PATH's assertion of this setoff right, and no agreement was forthcoming.[1]

---

**1.** The question of whether Port Authority/PATH was entitled to raise the defense was ultimately resolved by this Court in its disposition of Port Authority/PATH's pre-trial motion seeking leave to amend its Third Party Answer to assert the defense, *see Monaghan v. SZS 33 Assocs.,* 1995 WL 10843, No. 89 Civ. 4900 (S.D.N.Y. January 12, 1995), holding that Port Authority/PATH was

entitled, as a matter of statute, to raise the setoff defense.

Section 15–108 permits a defendant (in this case a third-party defendant) to reduce the amount of its liability to a plaintiff (in this case a third-party plaintiff) by the amount of any settlement payment plaintiff received from another

Subsequent to the November 14 settlement meeting the trial of the third party action was adjourned to December 5, at which time, on the failure of any agreement between SZS and Port Authority/PATH, it was set for January 11, 1995.

At the oral argument on this motion on December 14 all parties conceded that at the November 14 meeting Port Authority/PATH agreed that the Monaghans were entitled to a recovery and that $7,500,000 was a fair and reasonable settlement amount for their claim, and that a full trial would be held of SZS' indemnity and contribution claims against Port Authority/PATH.

### 2. Facts Concerning the Contractual Indemnity

In 1935 Gimbels granted an easement to the Hudson Manhattan Railroad Company for a stairway ("Stairway 307") running through the Gimbels building connecting the sidewalk with the 33rd Street PATH station. The terms of the easement are contained in the agreement executed by those parties in 1935 (the "1935 Easement Agreement"). The 1935 Easement Agreement uniformly refers to Stairway 307 as "Stairway No. 1." Port Authority/PATH, as successor to the railroad company, and SZS, as successor to Gimbels, are the successors-in-interest to the 1935 Easement Agreement.

In Article Sixth of the 1935 Easement Agreement, Port Authority/PATH's predecessor-in-interest agreed, with regard to Stairway 307, to:

> be responsible for all accidents to persons ... however suffered ... and ... exonerate, indemnify and save harmless ... [SZS] ... from and against any and all loss, cost, expense, damage and liability ... arising out of or in connection with any such accident ... *excepting, however* ... *accidents resulting from or on account of negligence of any employee of ... [SZS]*.

(Emphasis added).

Article Sixth of the 1935 Easement Agreement also makes mention of certain enumerated stairways which provided access to the subway system operated by the City of New York (the "City") one of which is referred to as "Stairway No. 2", a stairway not involved in the attack on Monaghan. Article Sixth states that in the event that the City fails to keep open any of the stairways, "[Port Authority/PATH] shall forthwith cease to be responsible hereunder for ... accidents to passengers or intending passengers of the [City's subway system] or licensees of the City ... suffered or incurred on [Stairway 307]".

Article Sixth also provides that Port Authority/PATH was required to "exonerate, indemnify and save harmless ... [SZS] ... from and against any and all loss, cost, expense, damage and liability ... arising out of or in connection with any [accident within the vestibule connecting the sidewalk with Stairway 307]" and also contains a cancellation provision, which will be discussed in detail below, triggered by the City's closing of any of the stairways.

Article Sixth also obligates Port Authority/PATH to indemnify SZS against all liability arising out of accidents incurred in the *vestibule which connects the sidewalk with* Stairway 307, if such accidents occur "during such hours when business shall not be conducted within the [Gimbels] building" (the "Vestibule Indemnity").

Stairway No. 2 was closed prior to the assault on William Monaghan.

### Conclusions

#### The Settlement Agreement is Enforced

■ Agreements to end litigation are generally favored by courts, and courts will enforce them whenever possible. *See Lee v. Rudd,* 120 Misc. 407, 198 N.Y.S. 628, 629 (N.Y.Sup.Ct.1923). Oral agreement between counsel may be enforced in order to bring about equitable results. *Kret v. Gergely,* 64 A.D.2d 692, 407 N.Y.S.2d 578, 579 (1978). Arms length settlements reached between attorneys who have the apparent authority to negotiate such settlements are favored by the courts and should not be negated in the absence of fraud or overreaching. *See Yonkers, Fur Dressing Co. v. Royal Ins. Co.,* 247 N.Y. 435, 438, 160 N.E. 778 (1928); *see also*

defendant who has settled with plaintiff prior to trial.

*Home Ins. Co. v. United Air Lines, Inc.,* 76 Misc.2d 799, 351 N.Y.S.2d 800, 801 (N.Y.Civ. Ct.1973).

■ In addition, a court will enforce an oral stipulation if the party who seeks enforcement shows that he or she acted in good faith in reliance upon that stipulation. *See Lane v. Selby Shoe Co.,* 45 F.2d 581, 583 (2d Cir.1930); *Mutual Life Ins. Co. v. O'Donnell,* 146 N.Y. 275, 280, 40 N.E. 787 (N.Y.1895). Each oral stipulation of settlement must be looked at individually to determine whether it should be enforced. *See Home Ins. Co. v. United Air Lines, Inc.,* 76 Misc.2d 799, 351 N.Y.S.2d 800, 801 (N.Y.Civ.Ct. 1973).

Although the general rule in New York is that oral stipulations of settlement will not be enforced unless made on the record in open court, courts have enforced reasonable oral stipulations where to do so appeared to effect substantial justice between the parties. *See Lee v. Rudd,* 120 Misc. 407, 198 N.Y.S. 628, 630 (N.Y.1923); *Mutual Life,* 146 N.Y. at 280, 40 N.E. 787 (1895); *Schwartz v. Leasehold Corp. of New York,* 181 Misc. 666, 48 N.Y.S.2d 146, 147 (N.Y.App.Term 1944); *Davis v. Davis,* 64 N.Y.S.2d 382, 384 (N.Y.Dom.Rel.1946); *In re Gardiner's Estate,* 204 Misc. 884, 126 N.Y.S.2d 121, 123 (N.Y.Sur.Ct.1953).

■ A settlement agreed to before a court but not recorded can still be enforced when there is little dispute as to its terms and no dispute as to the parties having reached an agreement. *See Golden Arrow Films, Inc. v. Standard Club of California, Inc.,* 38 A.D.2d 813, 328 N.Y.S.2d 901, 901–02 (1972). In view of the fact that an agreement was reached, the absence of significant disagreement as to its terms and contingencies, and the Monaghans' good-faith reliance on the settlement, the oral stipulation will be enforced.

SZS contends that under *In re Dolgin Eldert Corp.,* 31 N.Y.2d 1, 334 N.Y.S.2d 833, 286 N.E.2d 228 (N.Y.1972) this settlement should not be enforced. However the New York Court of Appeals in *Dolgin* noted that the agreement in question there was not definite and complete in important respects and was not supported by competent evidence. The affidavits of counsel are consistent about the agreement that was reached on November 14, and establish that a definite settlement was reached and the terms of that settlement. Further, the *Dolgin* case does not concern an agreement enforced on the basis of a party's good faith reliance, as is the case here.

■ It is also suggested by SZS that this matter cannot be decided without a hearing as to the facts surrounding the disputed settlement agreement. *See Mutual Life,* 146 N.Y. at 275, 40 N.E. 787; *Kirkeby–Natus Corp. v. Gevinson,* 33 A.D.2d 883, 307 N.Y.S.2d 586, 586–87 (1969). However, the cited cases concerned factual disputes over whether a meeting of the minds had been reached and/or the terms of the purported agreement. Here, the Court was present at the settlement conference and is in a position to make a finding based on the affidavits and the events. No affidavit submitted disputed the terms upon which the parties at the November 14 meeting agreed.

■ SZS also contends that assertion of the setoff defense somehow vitiates Port Authority/PATH's agreement to proceed to trial on SZS' third-party claims against it. However, the substantive issues in this diversity action are governed by New York law, and the setoff defense is an express statutory provision, and is part of the fabric of multiparty tort litigation in New York. SZS was well aware of the General Obligations Law at the time of its settlement with McLane.

■ Port Authority/PATH's agreement to proceed to a trial on SZS' claims for indemnification and contribution could not reasonably be construed as an implied waiver of the § 15–108 defense. Port Authority/PATH's right to assert the setoff was intact absent an express waiver. Indeed, the existence of the issue and the inability of Port Authority/PATH and SZS to reach an agreement resulted in the requirement to try the third-party action. The agreement as to the Monaghans was unaffected by the assertion by Port Authority/PATH of the setoff. SZS has cited no law to support the opposite position.

Since the November 14 meeting ended with an agreement from Port Authori-

ty/PATH on the two contingent points, the liability to the Monaghans and the amount of that liability, SZS and the Monaghans agreed that the underlying action between them was settled. Port Authority/PATH, in its affidavit regarding that meeting makes reference to "the oral agreement reached in conference before this court." An agreement was reached and its terms were as described above.

SZS also makes reference to the rule stated in New York C.P.L.R. 2104, which requires oral stipulations to have been made in open court, on the record, in order to be enforceable. This rule is one of convenience, intended to spare courts from the burden of engaging in a "he said, she said" inquiry with regard to an unrecorded settlement. But this rule is not to be applied literally so as to work injustice. *See Lady Madonna Indus., Inc. v. Pereira,* 76 B.R. 281, 290 (1987); *Hansen v. Prudential Lines, Inc.,* 118 Misc.2d 568, 461 N.Y.S.2d 670, 675 (N.Y.Sup. Ct.1933); *A.J. Tenwood Assoc. v. U.S. Fire Ins. Co.,* 104 Misc.2d 467, 428 N.Y.S.2d 606, 670 (N.Y.Sup.Ct.1980).

As the court in Hansen pointed out regarding C.P.L.R. 2104:

> It has been recognized, however, that the rule requiring stipulations of settlement to be in writing is one of convenience designed to relieve courts from having to resolve disputes as to the terms of such stipulations. Thus where there is no dispute as to terms it is eminently reasonable to refuse to permit use of the rule against a party who has been misled or deceived by the oral stipulation ... or *who has relied upon it.*

*Hansen,* 461 N.Y.S.2d at 675 (emphasis added) (*citing* 2-A J. Weinstein, H. Korn & A. Miller, N.Y.Civ.Prac., ¶ 2104.04 (1987)).

For all of these reasons, the Monaghans' motion to enforce the settlement will be granted.

### Port Authority/PATH Must Indemnify SZS Under the Terms of the 1935 Easement Agreement

#### The Contractual Indemnity Provisions Are Not Ambiguous

■ Interpretation of a contract provision is a mixed question of law and fact, and the court's task is to determine the intent of the parties. *Antilles Steamship Co. v. American Hull Ins.,* 733 F.2d 195, 199 (2d Cir.1984). As a threshold matter, courts inquire as to whether the provision in question is ambiguous, i.e., whether it is subject to at least two conflicting reasonable interpretations. *See Mellon Bank, N.A. v. United Bank Corp.,* 31 F.3d 113, 116 (2d Cir.1994) (at Westlaw page *14). In determining whether a clause is ambiguous, a court must examine the entire contract, in order to safeguard against adopting an interpretation that would render any individual provision of the agreement superfluous. *Sayers v. Rochester Telephone Corp. Suppl. Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993) (at Westlaw page *23).

■ No ambiguity exists when a contract provision has a definite and precise meaning, without danger of misconception as to the intended meaning of the agreement, and concerning which reasonable people would not disagree. *See Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978); *Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992); *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir. 1990). The language of the indemnity provisions upon which SZS bases its claim of contractual indemnity have definite and precise meaning and there is no danger of misconception in determining the intent of the agreement. There is no reasonable basis for a difference of opinion on the meaning of the indemnity provision or of the other provisions of the agreement that purportedly affect the efficacy of the indemnity provision. Given this lack of ambiguity, the indemnity provisions will be enforced.

SZS presses its claim for contractual indemnification as an alternative theory to its common law indemnity claims. They contend that Port Authority/PATH is obligated to indemnify them based on two passages contained in Article Sixth of 1935 Easement Agreement.

One of the two indemnity provision concerns accidents incurred within the vestibule

connecting the sidewalk to Stairway 307. The other concerns accidents incurred within Stairway 307 itself. Before parsing the language of the two indemnity provisions upon which SZS bases its claim, it should be noted that there has been no express finding in this case as to whether the assault on Monaghan took place in the vestibule or on Stairway 307 itself. Such an express finding was not required in order for the jury to reach its verdict on the common law indemnity questions, and, as will be seen, neither is such a finding required in order to determine whether Port Authority/PATH is contractually bound to indemnify SZS for its liability to the Monaghans.

### Stairway Indemnity

■ Article Sixth first obligates Port Authority/PATH to indemnify SZS against all liability arising out of accidents occurring within Stairway 307 except for "accidents resulting from or on account of negligence of any employee of [SZS]" (the "Stairway Indemnity"). The Stairway Indemnity was intended by the original parties to bind the easement holder to indemnify the grantor of the easement against any loss arising from accidents taking place in the stairway except for those resulting from the negligence of the grantor of the easement.

Port Authority/PATH contends that a cancellation clause in the 1935 Easement Agreement operated to cancel the Stairway Indemnity. They claim that, per the language of the agreement, the closing of Stairway No. 2 by the City cancelled the Stairway Indemnity. This argument fails on the language of the Stairway Indemnity itself, which cancels Port Authority/PATH's obligation to indemnify SZS only for "accidents to passengers or intending passengers of the [City's subway system] or licensees of the City." It was uncontroverted at the trial that William Monaghan was a Port Authority/PATH passenger and was on his way to the PATH subway station to board a PATH train at the time he was assaulted. The closing of Stairway No. 2 by the City had no impact on the Stairway Indemnity as it applies to this case. The provision binds Port Authority/PATH to indemnify SZS against that portion of its liabil-

ity to the Monaghans for injury to Monaghan which occurred on Stairway 307.

### Vestibule Indemnity

■ Port Authority/PATH challenges the Vestibule Indemnity on two grounds. The first is that the phrase "during such hours when business shall not be conducted within the [Gimbels] Building" does not include the time at which Monaghan was assaulted. The plain language of the provision represents a common sense allocation of the responsibility for the vestibule, assigning responsibility to Port Authority/PATH for accidents taking place at any time when the vestibule would be closed but for Port Authority/PATH's need to provide access for its passengers. Monaghan was injured at such a time.

The fact that Gimbels, the retailing establishment, had gone out of business at the time of the accident does not alter the allocation of risk that had been bargained for in 1935 by Gimbels *as a property owner*. If no one needed the vestibule to be open, it would be closed. If Port Authority/PATH alone needed it to be open, then Port Authority/PATH would indemnify the owner of the property against liability for accidents occurring during the periods when the vestibule was open solely for Port Authority/PATH's purposes. Monaghan was assaulted during such a period.

Port Authority/PATH's second challenge to the Vestibule Indemnity is based, similarly to its challenge to the Stairway Indemnity, on the cancellation provision triggered by the City's closing of Stairway No. 2, and again, this challenge fails on the express language of the agreement. The Vestibule Indemnity provides that, in the event the City closed one of the stairways, Port Authority/PATH would cease to be liable for accidents occurring within that vestibule connected to Stairway No. 3. As was mentioned previously, Stairway 307 is referred to in the 1935 Easement Agreement as "Stairway No. 1", not "Stairway No. 3." Thus the closing of Stairway No. 2 had no impact on Port Authority/PATH's obligation to indemnify SZS against liability for accidents occurring within the vestibule connected to Stairway 307. Port Authority/PATH must indemnify SZS against that portion of SZS' liability to the

Monaghans for William Monaghan's injury which occurred in that vestibule.

Since neither of Port Authority/PATH's challenges to the Vestibule Indemnity are successful, Port Authority/PATH is required to indemnify SZS for liability arising from accidents occurring in the vestibule. Since both the Stairway and Vestibule Indemnities are effective, Port Authority/PATH must indemnify SZS for its liability to the Monaghans regardless of whether it is attributable to injuries incurred by Monaghan in the vestibule or on Stairway 307.

### 3. *Allocation*

As mentioned above, SZS' claim for contractual indemnity was advanced as an alternative to its common law indemnity claims. It is therefore necessary to determine what effect, if any, the finding herein that both of the contractual indemnity provisions are effective has on the allocation of liability found by the jury. That question, in turn, depends on, indeed is synonymous with, the question of what effect, if any, an indemnitee's own negligence has on a contractual indemnity provision.

The exact scope of a contractual promise to indemnify and the meaning of the provision regarding the indemnitee's own negligence may be determined by factors beyond the face of a written contract, *see United States v. Seckinger,* 397 U.S. 203, 212–13, 90 S.Ct. 880, 885–86, 25 L.Ed.2d 224 (1970) (Brennan, J.), but in the absence of explicit language in the contract a court must be "firmly convinced" by extrinsic factors that any proffered reading is correct. *Seckinger,* 397 U.S. at 211, 90 S.Ct. at 885. The provision in the 1935 Easement Agreement expressly carves out an exception to the indemnification for "accidents resulting from or on account of negligence of any employee of the [SZS]." The contract is silent as to whether Port Authority/PATH must indemnify SZS against liability for an accident the responsibility for which is attributable in part to Port Authority/PATH and in part to SZS. The *Seckinger* Court interpreted a contractual provision that, on its face, only indemnified the indemnitee against liability arising from the negligence of the indemnitor, who was a contractor for the indemnitee.

In determining what force, if any, the indemnity provision had regarding accidents attributable to the negligence of both the indemnitor and the indemnitee, the *Seckinger* Court held that the most reasonable interpretation was that the parties had intended to be bound by a rule of comparative negligence. *See Seckinger,* 397 U.S. 203, 208, 214–15, 90 S.Ct. 880, 883–84, 886–87; *accord Shamrock Towing Co. v. City of New York,* 16 F.2d 199 (2d Cir.1926); *see also United States v. Haskin,* 395 F.2d 503 (10th Cir. 1968); *Brogdon v. Southern R. Co.,* 384 F.2d 220 (6th Cir.1967); *Williams v. Midland Constructors,* 221 F.Supp. 400 (E.D.Ark. 1963); *C & L Rural Elec. Coop. Corp. v. Kincaid,* 221 Ark. 450, 256 S.W.2d 337 (1953), *after remand,* 227 Ark. 321, 299 S.W.2d 67 (Ark.1957); *Young v. Anaconda American Brass Co.,* 43 Wis.2d 36, 168 N.W.2d 112 (1969). Although *Seckinger* was a case in which the United States was a party, and in which the Federal Tort Claims Act was implicated, courts have readily adopted its approach to interpretation of indemnity agreements among non-governmental parties. *See Tran v. Becker & Assocs.,* 767 F.2d 223, 229 (1985); *Murphy Pacific Corp. v. Westinghouse Electric Corp.,* 331 F.Supp. 1348, 1349 (W.D.Wa.1971).

Both the original and successor parties to the 1935 Easement Agreement were confronted with the fact that the easement to an extent intertwined their respective business operations, requiring cooperation by, and allocation of duties among, their respective employees and contractors. This is evidenced in the contract by the careful attempt made to allocate responsibility for lighting, cleaning, maintaining and securing the several stairways and vestibules. The very presence of an exception in the indemnity clause for accidents attributable to the negligence of SZS evinces the parties' awareness that an accident might occur on Stairway 307 due to the negligence of either party. The exception clearly indicates the parties' intention to affect no change in the common law default which attributes liability to the negligent party. If accidents due to the negligence of

**1046**

*either* party were envisioned and provided for by the parties, the parties must have intended that liability for accidents attributable to negligence of *both* parties would be proportionately shared.

This conclusion leaves the jury's allocation of the respective percentages of liability undisturbed. The jury found that Port Authority/PATH was liable to SZS on one of the two common law indemnity claims. The conclusion that Port Authority/PATH is also liable on the contractual indemnity, according to a comparative negligence scheme of apportionment, is consistent with the jury's finding and simply stands as an alternative basis for the jury's allocation. That allocation is identically applicable to a finding that SZS was entitled to common law indemnification as to the finding herein that SZS is also entitled to contractual indemnification.

### Conclusion

It was agreed in the settlement that $7,500,000 is due to the Monaghan's in settlement of their claims against SZS. The jury's finding as to SZS' liability to the Monaghan's is a finding that SZS was, itself, negligent and is responsible for 15 percent of that settlement amount. The jury's finding as to Port Authority/PATH's percentage of the liability stands as that portion of SZS' liability to the Monaghan's that is attributable to Port Authority/PATH *either* through the common law indemnity found by the jury or through the contractual indemnity provision discussed here, in either case requiring Port Authority/PATH to pay 80 percent of the settlement amount.

For the reasons set forth above, plaintiffs' motion to enforce the November 14 settlement agreement is granted. In addition, the Port Authority/PATH, pursuant to the 1935 Easement Agreement, will indemnify SZS against its liability to the Monaghans to the extent of SZS' liability.

Settle order on notice.

It is so ordered.