**Eleanor MONAGHAN, Individually and as Guardian Ad Litem for William Monaghan, an incompetent, Plaintiff–Appellee,**

v.

**SZS 33 ASSOCIATES, L.P. Delaware Limited Partnership, Defendant–Third–Party Plaintiff–Appellant–Cross–Appellee,**

v.

**The PORT AUTHORITY OF NEW YORK AND NEW JERSEY and Port Authority Tran–Hudson Corp., Third–Party Defendants–Appellees–Cross–Appellants.**

**SZS 33 ASSOCIATES, L.P. Delaware Limited Partnership, Second–Third–Party Plaintiff,**

v.

**TISHMAN CONSTRUCTION CORPORATION OF NEW YORK and McLane Security, Inc., Second–Third–Party Defendants.**

Nos. 359, 504, Dockets 95–7277, 95–7301.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1995.

Decided Jan. 12, 1996.

---

Frederick B. Simpson, Albertson, NY (Deborah Del Sordo, Phil McManus, Ahmuty, Demers & McManus, Albertson, New York, of counsel) for defendant-third-party-plaintiff-appellant-cross-appellee.

Carlene V. McIntyre, New York City (Arthur P. Berg, Keith E. Harris, Ira Tripathi, Milton H. Pachter, New York City, on the brief) for third-party defendants-appellees-cross-appellants.

Alan J. Konigsberg, New York City (Alani Golanski, Audrey M. Perlman, Levy Phillips & Konigsberg, L.L.P., New York City, of counsel) for plaintiff-appellee.

Before: ALTIMARI, McLAUGHLIN and PARKER, Circuit Judges.

PARKER, Circuit Judge:

At 7:15 p.m. on March 23, 1987, William Monaghan was assaulted and shot in the head during an apparent attempted robbery by three men. The assault, which resulted in severe brain damage, occurred as he was approaching or descending a staircase leading from the vestibule of a commercial building on 33rd Street and Sixth Avenue in Manhattan to the subway below. His guardian ad litem, Eleanor Monaghan, filed this diversity action against the owner of the building, SZS 33 Associates, L.P. ("SZS"), alleging that it failed to reasonably ensure the safety of the premises. SZS, in turn, filed a third-party complaint for indemnification and contribution against the Port Authority of New York and New Jersey and its subsidiary, the Port Authority Trans–Hudson Company (collectively "PATH"), which owns the subway at the location of the shooting and holds an easement running through the SZS premises, including the stairway leading to the station.

Before us are appeals from two judgments entered in the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*). First, SZS appeals

from a February 23, 1995 judgment enforcing a settlement between SZS and plaintiff and awarding plaintiff $7.5 million in damages from SZS. SZS primarily argues that there was no final settlement among the parties. Second, SZS appeals from a judgment entered on March 8, 1995 after trial in the third-party action, granting SZS judgment over against PATH in the amount of $5,375,000 on an indemnity theory. SZS claims that if there is a settlement it is entitled to indemnification as to the entire $7.5 million, plus its defense costs. PATH cross-appeals from the same judgment, contending that it should not be required to indemnify SZS at all.

We affirm both judgments.

## BACKGROUND

In a 1935 agreement between the predecessors of SZS and PATH (respectively, Gimbel Brothers, Inc. and the Hudson Manhattan Railroad), Gimbel granted an easement to the Railroad that includes the stairway where the assault occurred, referred to as Stairway No. 1 in the agreement. In Article Sixth (a) of the agreement, the Railroad agreed

> at its own cost and expense to maintain ... in good condition and repair, and to properly light, that portion of *Stairway No. 1* from the point of connection thereof with the new concourse of the Railroad Company up to the point of connection thereof with the Lobby or Vestibule Entrance within the Gimbel Building at the street level on Sixth Avenue, including the landing thereon ..., to keep said Approaches free from obstructions and in a clean, dry, neat, safe and suitable condition for the use of passengers and intending passengers ..., *and to take every reasonable precaution to prevent nuisances, disorders and breaches of the peace therein so that persons using said Approaches may pass through the same freely and safely, without annoyance, interference or molestation....*

(Emphasis added.) Article Sixth (b) (the stairway-indemnity clause) provides that the Railroad agreed "to be responsible for all accidents" that occur in the area described above and

> at all times *to exonerate, indemnify and save harmless* ... Gimbel ... from and against any and all loss, cost, expense, damage and liability, or suits or claims therefor, arising out of or in connection with any such accident or accidents, *excepting* ... accidents resulting from or on account of negligence of any employee of ... Gimbel....

(Emphasis added.)

An additional section (undesignated by letter or number) of Article Sixth (the vestibule-indemnity clause) provides:

> The Railroad Company further agrees that ... *during such hours when business shall not be conducted* within the Gimbel Building, it will ... properly light, clean and care for the lobbies or *Vestibule Entrances* within the Gimbel Building, and the entrances thereto on the street level, connecting with Stairways Nos. 1 and 3, respectively, will be responsible for all accidents to persons and/or property, howsoever suffered or incurred, within either of said lobbies or Vestibule Entrances, or entrances thereto, during such hours, and at all times will *exonerate, indemnify and save harmless* ... Gimbel ... from and against any and all loss, cost, expense, damage and liability, or suits or claims therefor, arising out of or in connection with any such accident or accidents....

(Emphasis added.) This last provision, pertaining to hours when Gimbel's was not conducting business, does not contain the limiting language "excepting ... accidents resulting from or on account of negligence of any employee of ... Gimbel."

At the time of the assault, March 1987, Gimbel's was out of business and the old Gimbel's store was undergoing demolition. SZS had taken certain measures to seal off or guard the entrances into the store while allowing continued use of the PATH stairway, and to patrol the premises.

Plaintiff commenced this action against SZS in 1989. The district court initially granted summary judgment to SZS on the grounds that SZS owed no duty to plaintiff

as to safety on the staircase and that the danger of criminal assault in the vestibule was not foreseeable. *Monaghan v. SZS 33 Assocs.*, 760 F.Supp. 355, 360–62 (S.D.N.Y. 1991). That judgment was affirmed in this Court by summary order. *Monaghan v. SZS 33 Assocs.*, 953 F.2d 635 (2d Cir.1991). In 1991, plaintiff filed a companion suit against the contractor, who provided security for SZS during the demolition, McLane Security, Inc., and the construction manager, Tishman Construction Corporation of New York. During discovery in the companion case, plaintiff obtained certain documents not previously provided during discovery in this litigation, which contradicted the position SZS had previously taken (for example, that SZS did not provide security in the area of the assault and that it had no documents relating to security). One of the documents, a memorandum entitled "General Security Procedures," provided that McLane's "duties will encompass prevention of unauthorized access to the building equipment and facilities," including entrance vestibules. On plaintiff's motion under Federal Rule of Civil Procedure 60(b)(3), the district court then vacated the judgment previously entered in favor of SZS and reinstated this action, noting that SZS "deliberately avoided turning over" the General Security Procedures memorandum and that "[t]he documents were arguably within the scope of the [document] request and definitely relevant to the subject matter involved." *Monaghan v. SZS 33 Assocs.*, No. 89 Civ. 4900 (RWS), 1992 WL 135821, at \*4 (S.D.N.Y. June 1, 1992).

After further discovery in which SZS produced copies of invoices from McLane and a November 1986 letter from McLane containing the latter's recommendations for a security force to patrol the site, plaintiff moved for sanctions against SZS under Federal Rule of Civil Procedure 37(b), claiming the invoices, letter and certain other items should have been disclosed in response to the earlier discovery demand. Finding that "SZS was grossly negligent with regard to locating, maintaining, and producing documents during the convoluted discovery phase of this action," the district court granted the application for sanctions and ordered that SZS be precluded "from raising as a defense the

issue that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon." *Monaghan v. SZS 33 Assocs.*, 148 F.R.D. 500, 509, 511 (S.D.N.Y.1993). Subsequently, the court awarded plaintiff certain attorney's fees.

SZS moved for summary judgment again in 1993, arguing that it owed no duty to plaintiff in the PATH easement and that plaintiff had failed to establish that the proximate cause of the assault was SZS's negligence. This motion was denied. The district court concluded that, resolving doubts in plaintiff's favor, "SZS owed Monaghan a duty of care to secure the Premises from precisely the kind of dangerous condition that facilitated the assault on him and caused his injuries." *Monaghan v. SZS 33 Assocs.*, 827 F.Supp. 233, 238 (S.D.N.Y.1993).

SZS filed third-party complaints against PATH, McLane and Tishman in July and August 1992, and the companion suit against McLane and Tishman was dismissed the following year. In late 1994, the third-party complaints against McLane and Tishman were also dismissed. In McLane's case, in consideration of its release from liability, McLane agreed to pay to SZS $1,000,000 (the limit of an insurance policy) or the amount of SZS's ultimate liability, whichever figure proved to be smaller.

In 1994, SZS, PATH and plaintiff engaged in settlement discussions. They circulated various drafts of stipulations, but none were signed by all three parties. At an unrecorded settlement meeting before the court on November 14, 1994, however, SZS offered to settle plaintiff's claims for $7.5 million, on condition that PATH agree (1) that this amount was fair and reasonable and (2) that SZS could seek contribution and indemnification from PATH in the third-party action. The third-party action went to trial in January 1995. The district court subsequently entered an order, over SZS's objection, enforcing the settlement between plaintiff and SZS. *Monaghan v. SZS 33 Assocs.*, 875 F.Supp. 1037, 1043 (S.D.N.Y.1995).

In the third-party action, the jury found that PATH owed a duty to SZS under the 1935 agreement to maintain the stairway and

to take reasonable precautions to ensure its safety, a duty PATH breached. The jury also found, however, that both SZS and McLane (then a non-party) were negligent as to the risk of harm to Monaghan, and that their negligence proximately caused Monaghan's injuries. The jury then allocated liability for plaintiff's damages as follows: 15 percent to SZS, 80 percent to PATH, and 5 percent to McLane.

Following trial, on February 3, 1995, the district court ruled as a matter of law that SZS was entitled to indemnification from PATH by virtue of the express indemnity clauses in the 1935 agreement. The court held that both indemnity clauses, pertaining to the stairway and vestibule, were in effect, and that PATH's liability to indemnify SZS did not depend on whether the assault occurred on the stairway or the vestibule (an issue that remains undecided). *Id.* at 1045. Asking "what effect, if any, an indemnitee's own negligence has on a contractual indemnity provision," *id.*, the district court next concluded that the parties "intended that liability for accidents attributable to negligence of *both* parties would be proportionately shared," *id.* at 1046. This conclusion, the court stated, was consistent with the jury's apportionment of liability. "The jury's finding as to Port Authority/PATH's percentage of the liability stands as that portion of SZS' liability to the Monaghan[s] that is attributable to Port Authority/PATH *either* through the common law indemnity found by the jury or through the contractual indemnity provision discussed here, in either case requiring Port Authority/PATH *to pay 80 percent of the settlement amount." Id.*

In a decision issued the following month, *Monaghan v. SZS 33 Assocs.*, No. 89 Civ. 4900 (RWS), 1995 WL 104083 (S.D.N.Y. Mar. 8, 1995), the district court revisited the apportionment issue and clarified its ruling. The court denied SZS's motion for judgment over of the entire $7.5 million judgment, noting that under New York law "a party may protect itself from liability for its own negli-

gence by means of an agreement to indemnify but this rule is restricted to the extent that indemnity provisions will not be construed to indemnify a party against his own negligence unless such intention is expressed in *unequivocal terms." Id.* at *3 (emphasis in slip opinion) (citing *Margolin v. New York Life Ins. Co.,* 32 N.Y.2d 149, 344 N.Y.S.2d 336, 297 N.E.2d 80 (1973)). The court found that the vestibule-indemnity provision of the 1935 agreement, being silent as to SZS's own negligence, certainly did not evidence an intent to indemnify SZS for its own negligence. *Id.* at *4. Further, the court found that SZS in any event could not "capitalize on this 'vestibule-specific' provision" because SZS made no attempt at trial to prove that the shooting took place in the vestibule and the jury made no finding on the question. *Id.* The court reached the same result under common-law indemnity principles: "[W]hen the party seeking indemnification is also found to be liable to a plaintiff by its own fault, although it may recover from that party to whom responsibility was delegated by contract, here Port Authority/PATH, that recovery may not be for the indemnified party's own liability [i.e., SZS's own negligence]." *Id.* (citing *Mas v. Two Bridges Assocs.,* 75 N.Y.2d 680, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990)).

In the same order, the district court rejected SZS's contention that it should be indemnified by PATH against SZS's liability to plaintiff attributable to the negligence of McLane (the 5 percent). *Id.* at *5. The court also denied SZS's request for reimbursement of its attorney's fees and expenses from PATH, finding that the indemnification language in the 1935 agreement "cannot be fairly construed to include indemnification for fees and expenses." *Id.* at *6. Finally, the court considered PATH's application for a set-off under New York General Obligations Law § 15–108(a) as to the $1,000,000 settlement payment SZS received from McLane.[1] In accordance with the statute

---

1. When a release ... is given to one of two or more persons liable or claimed to be liable in tort for the same injury ... it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipuleted [*sic*] by the release

... or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages ... whichever is the greatest.

and with equitable rules against double recovery and unjust enrichment, the district court held that PATH was entitled to the setoff. *Id.* at \*7. As a result of its rulings on partial indemnification and set-off, the court entered judgment against PATH in the amount of $5,375,000.[2]

## DISCUSSION

1. *SZS's Appeal in the First–Party Action*

■ SZS asserts the parties never reached a final settlement agreement, and that the district court erred in enforcing the purported settlement against SZS. Plaintiff, SZS and PATH had circulated proposed stipulations, but none were ever signed by all parties as issues relating to contribution by PATH remained unresolved.

However, the parties were together in court on November 14, 1994, and, although a contemporaneous record was not made, they discussed a proposed settlement with the judge. In its decision of February 3, 1995, the court stated:

> At the November 14 settlement meeting, SZS offered to pay plaintiffs $7,500,000 in settlement of plaintiffs' claims against SZS, contingent upon Port Authority/PATH's agreement that (i) the plaintiffs were entitled to compensation and that this settlement amount was fair and reasonable, and (ii) Port Authority/PATH and SZS would proceed to trial of ... SZS' third-party action for indemnification and contribution. Plaintiffs['] counsel accepted this offer on behalf of plaintiffs and the trial date was adjourned to November 21, 1994. SZS and Port Authority/PATH sought to reach a written agreement and during that process Port Authority/PATH sought to preserve, in the express language of the proposed writing, its right to assert the affirmative defense of setoff as offered by § 15–108 of the New York General Obligations Law. SZS took issue with the Port Authority/PATH's assertion of this setoff right, and no agreement was forthcoming. Subsequent to the November 14 settlement meeting the trial of the third party action was adjourned to December 5, at which time, on the failure of any agreement between SZS and Port Authority/PATH, it was set for January 11, 1995.

> At the oral argument on this motion [to enforce the settlement] on December 14 all parties conceded that at the November 14 meeting Port Authority/PATH agreed that the Monaghans were entitled to a recovery and that $7,500,000 was a fair and reasonable settlement amount for their claim, and that a full trial would be held of SZS' indemnity and contribution claims against Port Authority/PATH.

*Monaghan*, 875 F.Supp. at 1040–41 (footnote omitted). Based on these findings and on equitable considerations—plaintiff had in good faith relied upon the agreement—the court enforced the terms of the oral settlement.

SZS essentially argues that because the scope of indemnity and contribution remained in dispute, the second condition of the November 14th settlement—that PATH and SZS would proceed to trial in the third-party action—was never satisfied. We are not persuaded. The condition, as acknowledged by all parties and as found by the district court, was only that SZS would be able to seek contribution and indemnification from PATH in a trial of the third-party action. This necessarily implied that PATH would waive its right to assert the statutory bar to SZS's contribution claim. *See*

---

N.Y.Gen.Oblig.Law § 15–108(a) (McKinney 1989).

**2.** The $1,000,000 settlement with McLane is set off against only that portion of the $7,500,000 total recovery for which SZS is entitled to seek indemnification or contribution, namely 85% of the total, or $6,375,000, resulting in an indemnity judgment of $5,375,000. 1995 WL 104083, at \*8.

The same result is achieved as follows: Before the set-off, PATH is liable to SZS for 80 percent of the plaintiff's $7,500,000 recovery, i.e., $6,000,000. McLane paid SZS $1,000,000. According to the jury verdict, McLane's liability to plaintiff is 5 percent of $7,500,000, or $375,000. So, without the set-off, SZS would get to "keep" the remainder of McLane's payment, i.e., $625,-000. That windfall amount was instead set off against PATH's liability, resulting in judgment against PATH for $5,375,000.

N.Y.Gen.Oblig.Law § 15–108(c) (McKinney 1989) ("A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."). Indeed, the fact that PATH never did raise the § 15–108(c) bar to the contribution claim is itself potent evidence of the existence of the agreement. But the condition did not mean that PATH would waive any and all defenses in that action. We do not believe that PATH's assertion of the set-off defense under § 15–108(a) (regarding the $1 million McLane settlement) in any way vitiated PATH's agreement to proceed to trial. As the district court found, the set-off defense "is part of the fabric of multi-party tort litigation in New York." 875 F.Supp. at 1042. We agree with the district court's sensible conclusion that PATH's "agreement to proceed to a trial on SZS' claim for indemnification and contribution could not reasonably be construed as an implied waiver of the [set-off] defense." *Id.*

■ We note that the parties' agreement did not meet the technical requirements of New York law for a binding settlement, *see* N.Y.Civ.Prac.R. 2104 (McKinney 1976), which mandate a signed writing, an order, or agreement in "open court." [3] *See In re Dolgin Eldert Corp.*, 31 N.Y.2d 1, 4–5, 334 N.Y.S.2d 833, 835–36, 286 N.E.2d 228 (1972). But "substantial compliance" with these requirements is deemed sufficient. *Popovic v. New York City Health & Hospitals Corp.*, 180 A.D.2d 493, 579 N.Y.S.2d 399, 400 (1st Dept.1992) (settlement agreement enforced where parties agreed in presence of court, though apparently unrecorded by court reporter). Moreover, plaintiff reasonably relied on the parties' oral agreement in permitting her trial date to pass and in foregoing her right to participate in the third-party trial. *See Smith v. Lefrak Organization, Inc.*, 142 A.D.2d 725, 531 N.Y.S.2d 305, 306 (2d Dept.1988) (defendants estopped from challenging oral stipulation of settlement that

did not comply with CPLR 2104 where plaintiff relied to his detriment upon settlement); *Hansen v. Prudential Lines, Inc.*, 118 Misc.2d 568, 575, 461 N.Y.S.2d 670, 675 (Kings County Sup.Ct.1983) (party opposing settlement may be estopped from relying upon technical noncompliance with CPLR 2104). Enforcing the settlement against SZS in the circumstances of this case was not an abuse of discretion.

SZS additionally contends the district court erred in its rulings that (1) granted plaintiff's motion under Rule 60(b) to vacate the judgment entered on SZS's first motion for summary judgment, (2) denied SZS's renewed motion for summary judgment against plaintiff, and (3) granted plaintiff's motion under Rule 37(b) for sanctions against SZS. In light of our decision affirming the district court's enforcement of the settlement between SZS and plaintiff, SZS is barred from pursuing these points of appeal, and we have no occasion to address the issues raised therein.

### 2. *SZS's Appeal in the Third–Party Action*

As described above, the district court determined that PATH is contractually bound to indemnify SZS for plaintiff's damages, except to the extent of SZS's own causal negligence, and as reduced by the set-off for McLane's contribution.

■ SZS first argues that PATH is contractually obligated to indemnify SZS for the entire judgment, as well as its defense costs, by virtue of the vestibule-indemnity clause in the 1935 agreement that applies during hours when the store was not conducting business. As noted above, that clause, unlike the stairway-indemnity clause, does not contain express language limiting its application in the event of an accident resulting from SZS's own negligence. SZS accordingly maintains

---

3. We assume, without deciding, that New York law provides the rule of decision for determining the validity of the oral settlement agreement. The agreement may constitute a procedural matter governed by federal law. *Cf., e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–55, 111 S.Ct. 2123, 2136–38, 115 L.Ed.2d 27 (1991) (district court, sitting in diversity, did not run afoul of

*Erie* by awarding attorney's fees under its inherent power rather than state law). In any event, the federal rule regarding oral stipulations does not differ significantly from the New York rule. *See Huertas v. East River Housing Corp.*, 813 F.2d 580, 582 (2d Cir.1987) (per curiam); *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir.1986).

that full indemnity is required under this provision *regardless* of any negligence on its part.

We agree with the district court in rejecting this contention. Because SZS did not establish, and the jury did not find (nor was ever asked to find), that the assault occurred in the vestibule rather than on the staircase, SZS cannot rely on the vestibule-indemnity clause.[4] Having failed to meet its burden to prove facts that would justify invocation of the vestibule-indemnity clause—the clause arguably most beneficial to SZS—SZS is constrained, instead, to rely upon the stairway-indemnity provision and to live with its exception for "accidents resulting from or on account of negligence of any employee" of SZS. And *that* provision clearly does not warrant indemnification as to the entire $7.5 million judgment, in light of the jury's finding that SZS was partially at fault for failing to prevent the assault upon Monaghan. *See Margolin v. New York Life Ins. Co.*, 32 N.Y.2d 149, 153, 344 N.Y.S.2d 336, 338–39 (1973) (although party may protect itself with an indemnity agreement, "indemnity provisions will not be construed to indemnify a party against his own negligence unless such intention is expressed in unequivocal terms").

■ We also agree with the district court in concluding that SZS is not entitled in these circumstances to recover from PATH its attorney's fees and costs incurred in defending this litigation. The indemnity provision itself is silent on the matter. Although New York law permits recovery of legal fees and expenses pursuant to general, broad indemnity clauses, *see, e.g., Di Perna v. ABC,* 200 A.D.2d 267, 269–70, 612 N.Y.S.2d 564, 567 (1st Dept.1994), the indemnity clause at issue here, with its exception for accidents arising from SZS's own negligence, should not be construed broadly to permit SZS to recover its legal fees and expenses in a case where the exception has in fact come into play. Much of SZS's "defense" was occupied

with efforts to demonstrate that PATH rather than SZS was to blame for the unsafe conditions prevailing at the time and place of the assault.[5]

■ SZS next argues that PATH must indemnify SZS for the entire judgment under common-law principles by virtue of its undertaking in Article Sixth (a) "to take every reasonable precaution to prevent nuisances, disorders and breaches of the peace ... so that persons using said Approaches may pass through the same freely and safely, without annoyance, interference or molestation." SZS contends that the common-law duty arising from this contractual undertaking is not preempted by the express indemnity clause, which contains the now-familiar exception for SZS's own negligence. Rather, SZS contends, the two obligations may stand side by side. Insofar as it goes, this appears to be an accurate statement of New York law. *See Hawthorne v. South Bronx Community Corp.*, 78 N.Y.2d 433, 437, 576 N.Y.S.2d 203, 205, 582 N.E.2d 586 (1991). But even if common-law and express contractual indemnity exist side by side, SZS has not shown that the district court erred in PATH's favor in holding that apportionment of damages was proper under common-law indemnity principles. *See Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 674–75, 554 N.E.2d 1257 (1990) (apportionment proper where each defendant violated separate duty to plaintiff). If anything, New York case law supports a proposition that offers even less help to SZS—that common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff (here, the duty to ensure that PATH users are safe from criminal assault). *See Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24–25, 494 N.Y.S.2d 851, 854, 484 N.E.2d 1354 (1985) ("A party who has settled and seeks what it characterizes as indemnification thus must show that it may not be held responsible in

---

**4.** Indeed, contrary to its *argument* on appeal, SZS maintains in the factual background section of its brief that Monaghan "was surrounded at the sixth step [of the stairway] by three assailants and was shot while resisting a robbery." Brief for SZS, at 4–5.

**5.** *Cf. id.* at n. 3 (citing *Hooper Assocs. v. AGS Computers,* 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989), as prohibiting, absent clear intent, indemnification for legal fees incurred in litigation between parties to indemnification agreement).

any degree. The statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification...."); *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453, 492 N.Y.S.2d 371, 375 (1st Dept.1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine."). In any event, SZS can derive no support from the cases for the view that it is entitled to full indemnification under the common law in a situation, as here, where the jury found it was partly at fault for the plaintiff's injuries.

■ SZS also argues that PATH must indemnify it for the 5% fault the jury attributed to McLane. This contention makes no sense. McLane paid SZS $1,000,000 in settlement of the claims, from which SZS turned over $375,000—5 percent of $7,500,000—to the plaintiff. SZS has therefore already been covered by McLane for McLane's portion of the damages, and cannot turn to PATH for the same amount.

■ Finally, SZS argues that the district court erred in applying the set-off rule of New York General Obligations Law § 15–108(a) with respect to the settlement with McLane, and in reducing PATH's liability accordingly. Section 15–108(a) provides:

> When a release ... is given to one of two or more persons liable or claimed to be liable in tort for the same injury ... it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipuleted [*sic*] by the release ... or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages ... whichever is the greatest.

Here, the releasor is SZS, the third-party plaintiff; PATH and McLane are the two "tortfeasors." The district court reduced SZS's claim against the nonsettling party (PATH) by the amount of the settlement with the settling party (McLane). Thus, as set out in footnote 2 above, SZS's total claim against PATH and McLane, $6,375,000, was reduced by the $1,000,000 settlement with McLane, resulting in a judgment against PATH in the amount of $5,375,000.

The wrinkle in this case is that PATH and McLane are not tortfeasors with respect to SZS; their liability to SZS sounds in contract. The underlying cause of action instituted by the Monaghans, however, is of course in tort, to recover for personal injuries, and defendant and third-party defendants alike are potentially liable as tortfeasors *with respect to plaintiff.* The statute applies in these circumstances. As required by § 15–108(a), a release was indeed "given to one of two or more persons liable or claimed to be liable in tort for the same injury." That release therefore "reduces the claim of the releasor against the other tortfeasors" by the amount of the consideration paid for the release. The district court's dexterous opinion correctly calculated the judgment in accordance with the statute. SZS contends, nonetheless, that the statute is applicable only to litigation in which a right of contribution arises, not a right of indemnity. It is true that the statute contemplates the existence of a potential contribution claim between the settling and nonsettling tortfeasors—the set-off is permitted *in lieu of* a contribution action—but nothing suggests the statute is inapplicable simply because the *releasor* has a third-party claim against the nonsettling tortfeasor for indemnity rather than the usual first-party tort claim. We hold that the district court properly offset PATH's liability in order to prevent SZS from obtaining a windfall.[6]

### 3. *PATH's Cross–Appeal*

PATH's position throughout this litigation was that, regardless of the language in the 1935 agreement, SZS had assumed significant control over security of the stairway and vestibule. Indeed, SZS had engaged a secu-

---

**6.** Without the set-off, SZS would recover $6,000,000 from PATH plus $1,000,000 from McLane, for a total of $7,000,000, or 93.33 percent of the $7,500,000 judgment awarded plaintiff. That would leave SZS paying only 6.67 percent, less than half the 15% responsibility allocated to SZS by the jury.

rity guard service, McLane, to patrol the premises during the demolition of the old store. PATH alleged SZS was negligent in maintaining a safe and secure stairway and vestibule at the time of the assault. As we have seen, the jury in the third-party action accepted PATH's position, but only to the extent of 15 percent of the total liability for Monaghan's injuries.

In its cross-appeal from the March 1995 judgment, PATH contends that SZS is not entitled to indemnification with respect to *any* of the plaintiff's judgment. It seeks reversal on the grounds that (1) the jury's verdict was effectively based on a theory of contribution among joint tortfeasors, and contribution is not available against PATH, which as a governmental agency owed no duty to the plaintiff; (2) under the 1935 agreement no contractual indemnification is permitted where a determination has been made that SZS's negligence caused the assault; (3) common-law indemnification is unavailable where the purported indemnitee, SZS, also breached a duty to plaintiff; and (4) the jury instructions were erroneous in several respects.

■ PATH's first argument fails because, even though the jury apportioned fault among the parties, SZS recovered from PATH on an indemnity theory, not a contribution theory. Regardless of the existence or nonexistence of a duty to plaintiff under tort principles, PATH was obligated under the 1935 agreement to indemnify SZS for the latter's liability to plaintiff, except to the extent SZS itself was negligent. PATH's fourth argument, regarding jury instructions, also depends on its assumption that recovery was based on contribution rather than indemnity, and fails for the same reason.

■ As to PATH's second argument, we do not find PATH's reading of Article Sixth (b) persuasive. That paragraph provides that the railroad shall indemnify SZS, as Gimbel's successor, against liability arising out of any accident on the stairway at issue "excepting . . . accidents resulting from or on account of negligence of any employee" of SZS. PATH insists that "the language of the agreement indicates that the intent was that the indemnification would not be trig-

gered at all if the accident resulted from SZS' negligence." Brief for PATH, at 23. But the question is really whether indemnification is triggered at all if the accident resulted *in part* from SZS's negligence and in part from other parties' negligence, as the jury found. Contrary to PATH's contention, the language does not indicate that indemnification should be entirely unavailable in those circumstances. To read the contract as PATH proposes would completely negate the indemnity clause whenever a portion of the causal negligence, no matter how small, is attributed to the building's owner. We reject this invitation. Although the contract is not pellucid on this point, we believe the district court's reading most likely reflects the contracting parties' intent.

■ PATH's third argument, that common-law indemnification is foreclosed where the purported indemnitee also breached a duty to the plaintiff, is the diametrical complement to SZS's argument that it was entitled to full common-law indemnification regardless of its own negligence. We need not, however, reach this issue because the indemnity award here is *independently* grounded on the express indemnity provision contained in the 1935 agreement, as made clear in the district court's February and March 1995 decisions. Even assuming PATH were correct that it has no common-law duty to indemnify SZS in light of the latter's own negligence, PATH nonetheless remains liable by virtue of the express indemnity clause to indemnify SZS, except to the extent SZS itself breached a duty of care to plaintiff.

## CONCLUSION

We affirm the district court's judgments in all respects.