953 F.Supp. 557 (1997)
Penny Fujiko WILLGERODT, on behalf of MAJORITY PEOPLES' FUND FOR THE 21ST CENTURY, INC., Plaintiff,
v.
Sasha HOHRI, Defendant.
No. 95 Civ. 6363 (MGC).
United States District Court, S.D. New York.
March 4, 1997.
*558 Simpson Thacher & Bartlett by Robert F. Cusumano, Paul Curnin, Jeffrey Pariser, Glenn S. Leon, New York City, for Plaintiff.
Sasha Hohri, New York City, pro se.

MEMORANDUM OPINION AND ORDER
CEDARBAUM, District Judge.
In this action, plaintiff Majority Peoples' Fund for the 21st Century, Inc. ("MPF"), a not-for-profit corporation, sues Sasha Hohri, a former president and director of MPF, for conversion, diversion and waste of corporate assets, fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., indemnification and breach of contract. These claims are based mainly on allegations that Hohri made unauthorized withdrawals from MPF's bank account, converted some of the withdrawn funds to her own use and transferred some of the funds to her boyfriend. Hohri has moved for summary judgment. MPF has made a cross-motion for partial summary judgment on the claims of conversion, diversion and waste of corporate assets, indemnification and breach of contract. MPF has also moved for confirmation of an oral settlement agreement which both parties entered into before Magistrate Judge Grubin. Plaintiff's motion to confirm the settlement agreement is granted for the reasons that follow.

Undisputed Facts
MPF instituted this action in August of 1995, seeking injunctive relief in order to prevent Hohri from continuing her alleged pattern of embezzling MPF's funds. A temporary restraining order, and then a preliminary injunction, were granted, freezing Hohri's assets. (Order of Judge Batts dated 8/16/95, Ito Aff. Exh. 2; Order of Judge Kaplan dated 8/25/95, Ito Aff. Ex. 4.) In its complaint, MPF alleges that Hohri wrote checks for thousands of dollars to herself in violation of MPF's Bylaws requiring two signatures *559 on all checks drawn on MPF's account. Hohri allegedly converted those funds to her own use and to the use of her boyfriend. She was then suspended from the presidency of MPF by the board of directors but allegedly continued to hold herself out as president. In particular, MPF alleges that Hohri opened an unauthorized bank account in MPF's name, deposited checks payable to MPF in that account, and withdrew funds from that account for her personal use. MPF also alleges that Hohri transferred approximately $50,000 from that account to her boyfriend.
By joint request of the parties, a settlement conference was held before Magistrate Judge Grubin on May 28, 1996. At that conference, Hohri and MPF's attorney agreed to settle the case if certain of Hohri's requirements could be met by MPF. (Mem. from Magistrate Judge Grubin dated 9/27/96.) However, after MPF agreed to meet Hohri's demands and its attorney sent her a proposed agreement, Hohri informed Magistrate Judge Grubin that she did not believe the proposed agreement reflected the agreement reached at the May 28, 1996 conference.
On August 21, 1996, at another conference before Magistrate Judge Grubin, Hohri and MPF's attorney discussed and agreed upon certain changes in the proposed written agreement. Following the discussion, Magistrate Judge Grubin asked Hohri: "With the provision that [MPF] agree to that, do you agree to settle this case?" (Tr. at 21.) Hohri replied that she "need[ed] to see what comes back from them." (Id.) Magistrate Judge Grubin explained to Hohri that nothing in the draft agreement would be changed except that which Hohri wanted changed, as discussed at the conference. She then asked Hohri: "[A]ssuming that ... you want to settle this case, correct?" Hohri replied "yes." (Tr. at 22.) Magistrate Judge Grubin then asked again: "So you can represent to me here on the record that if everything we've discussed is done in this agreement, as we've discussed it today, we have this case settled, and you hereby say yes, you settle this case?" (Id.) Again, Hohri answered "yes." Finally, Magistrate Judge Grubin explained to Hohri that "having said you will settle on this basis we have discussed, there is a provision in the law that says having said that here, in court, in front of me, you are bound to it. You can't change your mind...."
MPF agreed to the changes discussed at the August 21, 1996 conference. A written settlement agreement was prepared by MPF and sent to Hohri for her signature on August 22, 1996. Hohri does not dispute that the writing reflects the terms she agreed to at the conference. Under the agreement, MPF and its board members release Hohri from all claims which they may have asserted prior to the date of the agreement related to Hohri's dealings with MPF, whether known or unknown. Hohri releases MPF and the board members from any claims which she may have asserted prior to the date of the agreement concerning the management of MPF. MPF agrees to move the Court to vacate an August 25, 1996 order freezing Hohri's assets. Hohri agrees to provide MPF with an affidavit as to her financial situation. Finally, the agreement recites that "[t]his settlement does not constitute an admission by any party of any wrongdoing."
Hohri then wrote this Court a letter, dated August 30, 1996, in which she stated: "I feel the settlement reached on August 21, 1996 is not in my best interest, and I have decided to reject it...." Hohri claimed in the letter that she had been suffering from postpartum depression at the conference, had not been prepared to discuss settlement and had felt pressured to settle the case. In a second letter to the Court, dated September 10, 1996, Hohri stated: "When I left the courtroom, I was under the impression that even though I may have verbally consented, the agreement is not formalized until I sign it." She also claimed that "a combination of mental fatigue, depression, confusion, fear and intimidation" was "the reason [she] agreed to the settlement and why the Court should allow its recantation."

Discussion
It is essentially undisputed that the parties reached an oral agreement to settle this case at the conference before Magistrate Judge *560 Grubin on August 21, 1996. The agreement was made on the record in open court. In her first letter to the Court, Hohri argued that she should be allowed to "reject" the settlement agreement but did not dispute that she had entered into such an agreement. Only in her second letter to the Court did Hohri claim that she had not believed the oral agreement to be binding. That contention is directly contradicted by the transcript of the conference, which shows that Magistrate Judge Grubin expressly informed Hohri that she could not later change her mind and refuse to settle the case.
Under New York law,[1] an oral settlement agreement is only binding if it is made in "open court."[2] N.Y. C.P.L.R. 2104; Dolgin v. Dolgin (In re Dolgin Eldert Corp.), 31 N.Y.2d 1, 8-10, 334 N.Y.S.2d 833, 838-40, 286 N.E.2d 228, 231-33 (1972); Monaghan v. SZS 33 Associates, L.P., 73 F.3d 1276, 1283 (2d Cir.1996). "Open court" within the meaning of N.Y. C.P.L.R. 2104 "is a technical term that refers to the formalities attendant upon documenting the fact of the stipulation and its terms, and not to the particular location of the courtroom itself." Popovic v. New York City Health and Hospitals Corp., 180 A.D.2d 493, 493, 579 N.Y.S.2d 399, 400 (1st Dep't 1992). That is, the importance of the "open court" requirement is to ensure that there are "some formal entries, if only in the clerk's minutes, to memorialize the critical litigation events." Dolgin, 31 N.Y.2d at 10, 334 N.Y.S.2d at 840, 286 N.E.2d at 233; see also Graffeo v. Brenes, 85 A.D.2d 656, 445 N.Y.S.2d 223 (2d Dep't 1981) (clerk's minutes sufficient). In this case, a complete transcript of the proceeding documents the oral settlement agreement between MPF and Hohri. Therefore, the requirements of N.Y. C.P.L.R. 2104 are met.
Settlement agreements are strongly favored in New York and may not be lightly cast aside. Rivera v. State, 115 A.D.2d 431, 432, 496 N.Y.S.2d 230, 231 (1st Dep't 1985); Galasso v. Galasso (In re Galasso), 35 N.Y.2d 319, 321, 361 N.Y.S.2d 871, 872, 320 N.E.2d 618, 618-19 (1974). Afterthought or change of mind are not sufficient to justify rejecting a settlement. Rivera, 115 A.D.2d at 432, 496 N.Y.S.2d at 231 (1st Dep't 1985); Golden Arrow Films, Inc. v. Standard Club of California, Inc., 38 A.D.2d 813, 328 N.Y.S.2d 901 (1st Dep't 1972). A court may relieve a party of the consequences of a settlement agreement "[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident...." Rivera, 115 A.D.2d at 432, 496 N.Y.S.2d at 231.
Hohri argues that: (1) she was suffering from postpartum depression and therefore was in an unstable mental and emotional state; and (2) she felt pressured, overwhelmed and intimidated. There is no evidence, however, that Hohri's depression caused her to lack contractual capacity or that her agreement was the result of impulsive or irrational behavior beyond her control. As the court stated in Blatt v. Manhattan Medical Group, P.C., 131 A.D.2d 48, 51, 519 N.Y.S.2d 973, 975 (1st Dep't 1987), "if mere depression, serious or otherwise, can be considered a valid reason to avoid a contract ... then the courts will be confronted with a plethora of claims by litigants declaring that they were too depressed or unhappy to know what they were doing and should, thus, be relieved, from the effects of their conduct." Treating depression as a basis for avoiding a contract would undermine "[t]he fundamental integrity and reliability of contracts." Id.
*561 Furthermore, there is no evidence in the record of any intimidation or coercion. The transcript of the proceeding shows that Magistrate Judge Grubin encouraged the parties to settle but did not unduly pressure or coerce Hohri. A court may not set aside a settlement where allegations of duress are not substantiated by the record. Juhasz v. New York City Transit Authority, 49 A.D.2d 730, 730-31, 372 N.Y.S.2d 664, 665 (1st Dep't 1975) (per curiam); Bernstein v. Salvatore, 62 A.D.2d 945, 946, 404 N.Y.S.2d 12, 13 (1st Dep't 1978).
For the foregoing reasons, plaintiff's motion to confirm the oral settlement agreement of August 21, 1996 is granted. Although it is not necessary to reach the cross-motions for summary judgment, plaintiff has raised genuine issues of material fact that preclude the granting of Hohri's motion.
SO ORDERED.
NOTES
[1] Even though jurisdiction is not based on diversity but on a claim under a federal statute, plaintiff assumes that New York law applies to the determination of whether the settlement agreement is valid and enforceable. Defendant does not argue otherwise. Federal rather than state law probably governs. However, as the Second Circuit recently noted in Monaghan v. SZS 33 Associates, L.P., 73 F.3d 1276, 1283 n. 3 (2d Cir.1996) (diversity case) (court assumed without deciding that New York law applied), "the federal rule regarding oral stipulations does not differ significantly from the New York rule."
[2] The statute itself speaks of an agreement "made between counsel in open court." N.Y. C.P.L.R. 2104. An agreement entered into by a pro se plaintiff in open court is likewise binding. Jacobs v. Jacobs, ___ A.D.2d ___, 645 N.Y.S.2d 342 (3d Dep't 1996); Kalomiris v. County of Nassau, 121 A.D.2d 367, 503 N.Y.S.2d 83 (2d Dep't 1986); Kalra v. Kalra, 170 A.D.2d 579, 566 N.Y.S.2d 356 (2d Dep't 1991).